Marco A. Palau, State Bar No. 242340
Joseph D. Sutton, State Bar No. 269951
Eric S. Trabucco, State Bar No. 295473
**ADVOCATES FOR WORKER RIGHTS LLP**
212 9th Street, Suite 314
Oakland, California 94607
Telephone: (510) 269-4200
marco@advocatesforworkers.com
jds@advocatesforworkers.com
est@advocatesforworkers.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL GUTIERREZ;<br><br>Plaintiff,<br><br>vs.<br><br>NEW HOPE HARVESTING, LLC.; GUADALUPE GASPAR; EUGENIA GASPAR MARTINEZ; ARACELI GASPAR GASPAR MARTINEZ; and JDB PRO, INC. d/b/a CENTRAL WEST PRODUCE., Inclusive,<br><br>Defendants. | Case No.: 2:19-cv-07077-FMO-AFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, PENALTIES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF**<br><br>Demand for Jury Trial |

## INTRODUCTION

1. Plaintiff MIGUEL GUTIERREZ is a Mexican national admitted to the United States to harvest and process strawberries as an employee for Defendants as a non-exempt, hourly employee pursuant to the federal H-2A visa program. Plaintiff brings this action against Defendants on behalf of himself and a class of similarly situated workers ("the Class") employed by Defendants during the period from four years prior to the filing of the initial Complaint to the present ("the Class Period").

2. The claims revolve around Defendants' breach of the terms of the H-2A

contract, failure to pay contractual wages due, failure to pay minimum wages and overtime wages due, including for off-the-clock work and compensable time spent traveling to and from the worksite, failure to pay wages due upon termination, failure to reimburse necessary expenses, failure to provide required meal and rest breaks, and violation of other California housing and labor protections.

3. Defendants' actions were unlawful and unfair, and Plaintiff, on behalf of himself and the Class, seeks restitution, declaratory relief, and injunctive relief under California Business and Professions Code §§ 17200, *et seq*. to prevent unfair competition and enjoin Defendants' continuing wrongful conduct in failing to comply with well-established labor laws, alleged in this complaint.

4. Plaintiff also seeks to enforce civil penalties for himself and other aggrieved employees (the "PAGA Workforce") as provided for under the California Private Attorneys General Act ("PAGA"), Labor Code §§ 2699, *et seq*.

5. Plaintiff, for himself and the Class, seeks unpaid wages and compensation; statutory and civil penalties permitted by law; damages; accrued interest; restitution of money obtained by Defendants from their unlawful business practices; declaratory and injunctive relief requiring Defendants to comply with all applicable California labor laws; attorney's fees and costs; all other forms of equitable relief permitted by law; and enforcement of all applicable penalties.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter and parties in this action pursuant to 28 U.S.C. § 1331 (federal question), and 29 U.S.C. § 1367 (Supplemental).

7. This Court has supplemental jurisdiction over the state law claims under the California Labor Code, and California Unfair Competition Law because they are part of the same case or controversy and are so related to Plaintiff's federal claims that they share common operative facts regarding Defendants' employment, payroll and timekeeping practices. Further, Plaintiff's state law

claims concern the same employment contract that formed the working arrangement for Plaintiff's federal claims. The claims arise from the NHH Defendants' use of the H-2A visa program and the terms and conditions to which Defendants were required to adhere. Resolving all state and federal claims in a single action serves the interest of judicial economy, convenience, and fairness to the parties.

8. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1854(a) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and because the Court has personal jurisdiction of Defendants.

**PARTIES**

9. Plaintiff MIGUEL GUTIERREZ ("Plaintiff") is a citizen and national of Mexico who at all relevant times, was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

10. Defendant NEW HOPE HARVESTING, LLC. ("NHH") was and is a California Limited Liability Company that has regularly conducted business in Santa Maria, California.

11. At all relevant times, Defendant NHH has operated on behalf of strawberry farms owned and controlled by growers and producers of berries, including JDB Pro, Inc.

12. Defendant JDB Pro, Inc. ("JDB" or "Central West," formerly sued herein as "Doe 1") is a California Corporation registered in the County of Santa Barbara under the fictitious name "Central West Produce." At all times relevant to this action, JDB has had its principal executive office in Santa Maria, California, with Jack Gresser serving as CEO/President, Secretary and Board Member, and Daniel Gresser serving as CFO/Treasurer. Upon information and belief, Bryan Gresser is Vice President of JDB.

13. At all times relevant to this action, Defendant JDB has been engaged in the business of growing, shipping and selling of fruit crops, including the growing of conventional and organic strawberries grown year-round in California, and more recently growing blueberries and blackberries.

14. Central West or the Gresser family have grown strawberries on the central coast of California since 1979, and the company has, at relevant times, operated in three California growing regions: Santa Maria, Oxnard and Salinas.

15. Defendant JDB also grows conventional and organic strawberries in Mexico and Florida.

16. Plaintiff is informed and believes and thereon alleges that Defendant JDB obtains or is provided agricultural workers to perform the work involved in the growing of its fruit crops, including strawberry crops, within JDB's usual course of business.

17. Plaintiff is informed and believes and thereon alleges that, Defendant NHH has, at all relevant times, supplied workers to perform agricultural labor to grow strawberries for JDB that are marketed and sold under the Central West Produce brand.

18. Defendant JDB is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and operated as a client employer within the meaning of California Labor Code § 2810.3(a)(1)(A).

19. During the 2018 strawberry season, Defendant NHH recruited, hired, and employed approximately 50 foreign workers, including Plaintiff, through the H-2A program to harvest, package, and process strawberries. Upon information and belief, NHH also recruited H-2A workers for the 2016, 2017, and 2019 strawberry seasons in California.

20. Defendant NHH is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) that recruited, hired and supplied workers to work on JDB farms and, as such, operated as a "labor contractor" within the meaning of California Labor Code § 2810.3(a)(3).

21. Defendants GUADALUPE GASPAR, EUGENIA GASPAR MARTINEZ, and ARACELI GASPAR GASPAR MARTINEZ (hereafter collectively referred to as "the GASPAR Defendants") are each individuals who reside and conduct business in the State of California, who at all relevant times to this complaint were acting directly or indirectly in the interest of NHH, and caused the violations of the state and federal labor protections suffered by Plaintiff and other employees of NHH.

22. EUGENIA GASPAR MARTINEZ has been, at all relevant times, a Manager and/or Member of NHH.

23. ARACELI GASPAR GASPAR MARTINEZ has been, at all relevant times, listed as Secretary and Agent for Service of Process for NHH.

24. GUADALUPE GASPAR is the owner of NHH.

25. The GASPAR Defendants violated or caused the violations of California law alleged herein while acting on behalf of NHH and JDB, and are liable for PAGA penalties under California Labor Code §§ 558 and 1197.1.

26. On information and belief, the GASPAR Defendants are owners, officers or managing agents of NHH and are liable for the violations of the Labor Code and Wage Order provisions herein pursuant to California Labor Code § 558.1.

27. The NHH and GASPAR Defendants shall be referred to collectively as the "NHH Defendants."

28. The NHH Defendants and JDB shall be referred to collectively as "Defendants."

29. Plaintiff is informed, believes and thereon alleges that at all relevant times, each Defendant, directly or indirectly, through an agent or other person, employed and/or exercised control over the wages, hours, or working conditions of Plaintiff and other current and former employees, and committed the acts complained of herein.

30. Plaintiff is informed, believes and thereon alleges that at all relevant times, each Defendant, directly or indirectly, through an agent or other person, engaged, employed, suffered, or permitted Plaintiff and other current or former employees to work.

31. Plaintiff further alleges that each Defendant is legally responsible for the occurrences and unlawful acts herein alleged and the resulting damages were actually and proximately caused by the other Defendants' conduct.

32. Plaintiff is informed, believes and thereon alleges that at all relevant times, each Defendant was acting as the agent of every other Defendant, and all acts alleged to have been committed by any Defendant were committed on behalf of every other Defendant; and, at all times relevant herein, each alleged act was committed by each Defendant, and/or agent, servants, or employees of each Defendant, and each Defendant directed, authorized, or ratified each such act. Plaintiff is informed, believes and thereon alleges that each Defendant, and each of them, were the agents, employees, co-conspirators, business affiliates, subsidiaries, parent entities, owners and/or joint ventures of each other Defendants, and each of them; and, in doing the things alleged herein, were acting at least in part within the course and scope of such agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

33. Whenever or wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and severally.

## FACTUAL ALLEGATIONS

34. Plaintiff is informed, believes and thereon alleges that in 2017, Defendant NHH applied for and obtained H-2A visas from the U.S. government for Plaintiff and approximately 49 other H-2A workers, and on information and belief other non H-2A Class Members, to work for Defendant NHH in strawberry fields located in and around Santa Maria, California, and it was authorized to employ those workers under the terms and conditions of the H-2A Certification and Job Order approved by the United States Department of Labor.

35. The 2019 H-2A Clearance Order specified that the work would be performed in fields leased from Defendant JDB.

36. The NNH Defendants acted in concert in applying for the certification, recruiting, and hiring of H-2A workers for admission and work under the approved H-2A application.

37. While working for Defendants during the 2018 strawberry season, Plaintiff and other Class Members were engaged in the production of goods for commerce as that phrase is used in the federal Fair Labor Standards Act ("FLSA").

38. During the 2018 strawberry season, Defendants jointly employed Plaintiff and the other H-2A workers for purposes of the FLSA and California law.

39. Defendants recruited and hired Plaintiff and other H-2A workers, directly or through their authorized agents, in the State of Baja California, Mexico, to perform work as strawberry pickers, packers, and field workers in and around Santa Maria, California, for the 2018 strawberry season.

40. Upon information and belief, Defendants recruited, hired and jointly employed Class Members to perform similar work throughout the Class Period.

41. During the Class Period, Plaintiff and Class Members worked at farms owned/leased and operated by JDB in California.

42. During the Class Period, JDB obtained or was provided agricultural labor by the NHH Defendants to perform the work of growing and harvesting of fruit crops, including strawberries. The production of such crops is within the usual course of JDB's business.

43. During the Class Period, the NHH Defendants provided agricultural labor to grow and harvest fruit crops, including strawberries, on land owned or controlled by JDB.

44. Plaintiff and Class Members were employed as non-exempt employees.

45. Plaintiff and, on information and belief, other H-2A workers, paid fees to obtain their visas and then incurred out-of-pocket expenses to travel to Santa Maria, California.

46. Plaintiff traveled to Santa Maria from Mexico on or around April 14, 2018.

47. Plaintiff began working for Defendants on or about April 20, 2018. Plaintiff

and, on information and belief, other H-2A workers, paid some or all the transportation and subsistence costs necessary to travel to California, from their hometowns in Mexico.

48. Defendants did not reimburse Plaintiff or, on information and belief, other H-2A workers for the fees and costs related to the processing, visa, administrative, and travel expenses described in paragraphs 45 and 47 during the first week of work. As a result, Plaintiff and, on information and belief, other H-2A workers were paid less than the applicable federal and/or California mandated minimum wage due for all hours worked in their first pay period.

49. At all relevant times, Defendants required or suffered or permitted Plaintiff and, on information and belief, Class Members to work without compensation, off-the-clock, to perform duties prior to and/or subsequent to the recorded time of their shifts.

50. Defendants required Plaintiff and other Class Members to report at 5:00 a.m. at the housing site where they would be picked up and transported to the worksites. During this travel time, Plaintiff and other Class Members were under the direction and control of Defendants. However, they were not compensated for this time.

51. Defendants transported Plaintiff and other Class Members from the employer-provided housing to the worksite in a van.

52. Plaintiff and other Class Members were provided with the time and location to report to the van, however, they were not given a reporting time to commence work in the field, nor advised of the work locations in advance.

53. Transportation for Plaintiff and the other Class Members benefitted the Defendants.

54. Defendants were required by law as a term of the H-2A certification to provide H-2A workers with transportation, and non-domestic H-2A workers could not have otherwise traveled to and from the worksites as they did not have driver's licenses or access to public transportation.

55. At all relevant times, Defendants used several vans to transport Plaintiff and the other Class Members. At various times, the vans stopped *en route* to or from the

worksite at more than one location to pick up or drop off other workers, benefitting only the Defendants, and Class Members were required to be on the bus at a the same time whether they were assigned to work at the first or the last drop off point.

56. Plaintiffs and, on information and belief, Class Members were not compensated for all hours worked.

57. Once Plaintiff and the Class Members arrived at the worksite, Defendants required that they perform preliminary tasks or preparatory duties like moving carts with empty cartons or throw trash away from the previous workday. Plaintiff and Class Members sometimes stood by waiting until they would go on the clock and be credited with hours worked only at that prescribed time.

58. At the end of the workday and after the end of the shift, Plaintiff and Class Members performed off-the-clock work, including work to complete production. However, they would not be credited or compensated for this time.

59. Plaintiff and Class Members were regularly required to wait prior to the prescribed time while Defendants' supervisors prepared the equipment for field work. Plaintiff and Class Members remained onsite or in the vans provided by Defendants while Defendants' prepared the equipment for field work and were not authorized or permitted to leave the worksite during this time.

60. From the time they were directed to report to the time they were released from work, which occurred after being dropped off at the housing sites, Plaintiff and, on information and belief, Class Members regularly worked more than 10 hours per day and in excess of 60 hours per week, but were not paid minimum wages, overtime wages, or contract wages due for all hours worked.

61. Defendants failed to accurately and completely record and report all hours worked by Plaintiff and, on information and belief, Class Members, including but not limited to the uncompensated transportation time, the off-the-clock waiting time when Class Members performed unpaid tasks or remained on standby at the beginning of their shift while Defendants prepared the equipment for field work, and the uncompensated

time spent performing tasks before the crew began harvesting and packing activities.

62. At all relevant times, Defendants failed to provide Plaintiff, and on information and belief, Class Members with accurate and complete itemized wage statements showing accurately the total hours worked, gross and net wages earned, all applicable rates of pay, and complete employer address.

63. Plaintiff and other Class Members, as part of their H-2A contracts were provided with housing, including a residence located at: 937 N. Dejoy St., Santa Maria, California 93458. Defendants operated and managed this residence. This residence housed 15 H-2A workers.

64. The housing provided to Plaintiff and other Class Members did not meet the minimum standards established under applicable state and federal laws. Plaintiff's housing did not have a laundry facility or laundry accommodation were not provided, it did not have an adequate dining table and chairs, it did not have an adequate cooking and kitchen facility to enable the H-2A workers to prepare their own meals, dishware and utensils used for food service were not permanently assigned to each occupant using the community kitchen, and the occupants had to share common drinking cups.

65. At all relevant times, Defendants failed to provide Plaintiff and other workers a laundry facility at the employer provided housing. As a result, Plaintiff and other Class Members were forced to pay to do their laundry at a laundromat outside of the employer provided housing.

66. At all relevant times, Defendants required that Plaintiff and, on information and belief, other Class Members to pay a weekly fee of $15.00 to clean the employer provided housing. Plaintiff and other Class Members paid this cleaning fee to the Defendants in cash after receiving their pay checks.

67. At all relevant times, Defendants required Plaintiff and, on information and belief, other Class Members to pay a fee of $3.70 per week to clean the vans used to transport Plaintiff and other Class Members from the employer provide housing to the worksite. Plaintiff and other Class Members paid this cleaning fee to the Defendants in

cash after receiving their pay checks.

68. At all relevant times, Defendants failed to provide Plaintiff and Class Members with a safe and healthful work environment during the workday as they handled strawberries.

69. Plaintiff and Class Members were not provided with proper field sanitation at work. Soap or another cleanser in the portable restrooms were not provided, and instead, Defendants provided antibacterial gel. The portable restrooms were not serviced during the workday and as a result, they were not maintained in a clean and sanitary condition during the entire workday. Single-use towels sometimes ran out and they were not regularly stocked.

70. Defendants failed to adequately take the necessary steps to prevent heat illness and Plaintiff and Class Members were not encouraged to rest, drink water, or cool down in the shade. Defendants also failed to provide shade to Plaintiff and other workers during all relevant times. Plaintiff and Class Members also did not receive training to inform them about heat illness and protection against heat stress, and on information and belief, Plaintiff's supervisors and/or foremen did not demonstrate any active compliance with the requirements of the heat stress regulations.

71. At all relevant times, Defendants failed to provide Plaintiff and Class Members with a safe and healthful environment by imposing a production pace that was unreasonably excessive. Plaintiff and Class Members were required to work at speeds that increased the risk of accident, injury, and heat illness. Plaintiff risked injury to his hands or slipping due to the Defendants' requirement that he work continuously at a fast pace. Plaintiff was also limited in using the portable restrooms due to time pressures. Additionally, the overtly fast pace could have exacerbated outdoor working conditions and body heat production.

72. Defendants failed to identify work hazards and respond accordingly to minimize preventable hazards, such as with the provision of appropriate personal equipment.

73. The terms of work offered to Plaintiff and other Class Members included, *inter alia*, the terms offered in the "clearance orders" submitted by Defendants to the U.S. Department of Labor to obtain permission to import foreign workers, the terms of work set forth in the federal regulations governing Plaintiff's and other H-2A workers' visas, 20 C.F.R. § 655.102, and the federal requirement to comply with all applicable federal, state, and local laws, 20 C.F.R. § 655.103.

74. At various times before and during the employment of Plaintiff and other Class Members, the terms of work were communicated to the workers.

75. Specifically, Plaintiff's work contract and, on information and belief the work contract of other Class Members, offered, *inter alia*, the following terms of work:

i. Wages for all hours worked equal to the higher of the state or federal minimum wage, the adverse effect wage rate, or the prevailing wage rate;

ii. Work or wages for 3/4 of the period running from the first workday to the end date specified in the clearance order;

iii. Payment of all visa, transportation, and recruitment expenses;

iv. Work at 45 hours per week to be paid at no less than the adverse effect wage rate of $13.18 per hour, the applicable state or federal minimum wage due, or the prevailing wage for the period commencing on the date of entry into the United States and ending January 10, 2019;

v. Compliance with California law regarding the minimum terms and conditions of employment, including but not limited to the applicable minimum wage, overtime wage, meal, and rest period protections and compensation;

vi. Housing, at no cost, that meets the minimum standards established by state and federal regulation of employee housing;

vii. Laundry services at no cost;

viii. Transportation at no cost;

ix. Three meals per day, which meet the state and federal standards for adequacy and nutritional value and/or adequate cooking and eating facility.

76. During the Class Period, Defendants violated the terms of the work contracts of Plaintiff and, on information and belief, of other workers when Defendants:

i. Failed to pay wages equal to the higher of the state or federal minimum wage, the adverse effect wage rate, or the prevailing wage rate for all hours worked;

ii. Failed to provide work at 45 hours per week;

iii. Failed to comply with the applicable provisions of California law including those regarding compensable time, overtime, wage statements, and meal and rest periods as mandated by California law;

iv. Failed to provide housing that meets the state and federal standards for employee housing;

v. Failed to provide transportation at no cost;

vi. Failed to provide housing at no cost;

vii. Failed to provide housing that met the applicable standards established by state and federal law;

viii. Failed to provide laundry services at no cost; and

ix. Failed to provide an adequate cooking and eating facility with proper dining table and chairs, proper kitchen facility to prepare meals, dishware and utensils were not permanently assigned to each occupant, and occupants had to share common drinking cups.

77. At all relevant times, each Defendant failed to compensate Plaintiff and other Class Members for all regular wages earned during off-the-clock time they spent at the start of the shift, including waiting for Defendants to prepare the equipment for field work, during compensable travel and during off-the-clock time at the end of the workday.

78. At all relevant times, the minimum wage provisions of California Labor Code §§ 1182.12 and 1197; and Industrial Welfare Commission ("IWC") Wage Order No. 14-2001, 8 California Code of Regulations § 11140 (Jan. 1, 2001), have applied to Plaintiff and other Class Members. Employees, including Class Members, who are covered by these provisions must be no less than of $10.00 per hour for all regular hours worked on January 1, 2016 through December 31, 2017, $11.00 per hour for all regular hours worked on January 1, 2018 through December 31, 2018, and $12.00 per hour from January 1, 2019, through the end of the contract period.

79. At all relevant times, during which Defendants employed temporary foreign labor, under the H-2A program, Defendants were required to pay the Adverse Effect Wage Rate ("AEWR") to their comparably employed U.S. workers for all work performed at wage rates which varied by year and were set by federal law. Plaintiff and the other Class Members were entitled to be paid at the AEWR of $11.89 per hour for work performed in 2016, $12.57 per hour for work performed in 2017, $13.18 per hour for work performed in 2018, and $13.92 per hour for work performed in 2019, and to be paid overtime at the rate of time and one half the applicable AEWR and/or double time at the rate of twice the applicable AEWR.

80. Defendants failed to pay the AEWR to Plaintiff and other workers who Plaintiff seeks to represent as a class.

81. At all relevant times, Defendants failed to compensate Plaintiff and, on information and belief, Class Members for all regular wages earned during uncompensated compensable travel, waiting time, and other off-the-clock time.

82. At all relevant times, Defendants required Plaintiff and, on information and belief, other Class Members to work more than 10 hours per day, including uncompensated travel, waiting time, and off-the-clock work, without paying the applicable overtime rate as required by Wage Order No. 14-2001, 8 California Code of Regulations § 11140 (Jan. 1, 2001). Defendants also required Plaintiff and, on information and belief, other Class Members to work seven days in a workweek without

paying the applicable overtime rate for the seventh day as required by Wage Order No. 14-2001, 8 California Code of Regulations § 11140.

83. At all relevant times, Defendants failed to authorize and permit meal periods for Plaintiff and other Class Members, and they prevented Plaintiff and other Class Members from taking legally-required complete and uninterrupted meal periods and/or second meal periods.

84. At all relevant times, Defendants failed to authorize and permit rest periods for Plaintiff and other Class Members and prevented them from taking legally-required second and/or third rest period per four hours of work or major fraction thereof.

85. At all relevant times, Defendants failed to provide Plaintiff and other Class Members with legally-required accurate itemized wage statements. Defendants' wage statements violated the requirements of California law by, without limitation, failing to state accurately the total hours worked, including off-the-clock work; failing to state accurately the gross and net wages earned based on an accurate reflection of all hours worked; failing to state accurately all applicable hourly rates for the pay period; and failing to provide Defendants' complete address beyond merely city, state, and zip code.

86. At all relevant times, Defendants failed to maintain accurate and complete payroll records showing the daily hours worked by Plaintiff and the class, including off-the-clock work, and wages earned.

87. At all relevant times, Defendants did not provide Plaintiff and Class Members with all the tools or equipment required or necessary to perform the job. Plaintiff and, on information and belief, Class Members were required to purchase without reimbursement some of their own necessary tools or equipment, including protective gloves and adhesive tape.

88. On or about May 12, 2018, Plaintiff informed GUADALUPE GASPAR that he needed to return to Mexico due to an emergency arising from his son's medical condition and need for surgery. GUADALUPE GASPAR immediately became irate and shouted at Plaintiff, preventing Plaintiff from formally requesting time off or more fully

explaining his circumstances. GUADALUPE GASPAR berated Plaintiff about the cost he incurred in bringing Plaintiff to the U.S., and then ordered Plaintiff to vacate the H-2A housing that evening or pay rent if he remained at the house while not working for Defendants. Left with no choice, Plaintiff returned to Mexico to attend to the needs of his son and family.

89. Defendants did not provide Plaintiff with any opportunity to take a leave of absence or return to work after the emergency was resolved.

90. Fearing reprisals, Plaintiff immediately left the housing and returned to Mexico.

91. Defendants failed to pay Plaintiff and, on information and belief, Class Members all wages owed upon the resignation or termination of their employment. Even when Defendants did remit a final check—for Plaintiff weeks after his termination and in response to a demand by his attorneys—such payment failed to include all accrued and earned wages, including minimum wages, overtime wages, and premium wages.

92. All actions and omissions alleged herein were undertaken by Defendants either directly and/or through their agents.

## **CLASS ACTION ALLEGATIONS**

93. Plaintiff brings this action individually and as a class action under Federal Rule of Civil Procedure 23 on behalf of the following Rule 23 Class:

> All non-exempt agricultural employees who performed field work for Defendants in the production of strawberries—including, but not limited to, tasks such as planting, cultivating, pruning, harvesting, picking, and packing—in California during the period four (4) years prior to the filing of the First Amended Complaint in this action through the date of this action's final disposition.

94. **Numerosity:** The Proposed Class is so numerous that joinder of all members is impracticable. On information and belief, at all times relevant to this action, Defendants have employed at least 50 individuals who satisfy the definition of the Proposed Class. These workers are geographically dispersed throughout the state, the

country, as well as in parts of Mexico. The majority of workers are low-income, are not native English-language speakers, and are unlikely to be informed of their rights and able to pursue an action independently and without Court notice. The Class Members are so numerous that joinder of all Class Members is impracticable. The individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

95. **Typicality:** Plaintiff's claims are typical of all other Class Members as demonstrated herein.

96. **Adequacy:** Plaintiff will fairly and adequately protect the interests of each Class Member. Plaintiff has no interests that are antagonistic to the other Class Members. Plaintiff's attorneys, the proposed Class Counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and during the pendency of this action will continue to incur, costs and attorneys' fees, that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member. Plaintiff has retained competent counsel experienced in wage and hour class action litigation.

97. **Predominant Common Questions:** Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class.

98. Common questions of fact and law predominate, including the following:

a. Whether Defendants suffered and permitted Plaintiffs and the Class to work off-the-clock before regularly scheduled shifts, during unpaid 30-minute meal periods, and after regularly scheduled shifts, and failed to compensate them at the legal minimum, overtime and/or contractual rates, in violation of the Wage Order 14 and Labor Code §§ 204b, 510, 1194, 1194.2, 1197, 1198, and California law;

b. Whether Defendants, as a matter of policy or practice, failed to relieve Plaintiff and the Class of all duty for uninterrupted, 30-minute meal periods

before the end of the fifth (5th) hour from the start of the shift, in violation of California Wage Order 14 and California Labor Code sections 226.7 and 512, and California law;

c. Whether Defendants, as a matter of policy or practice, failed to authorize and permit Plaintiff and the Class to take 10-minute rest breaks for each four (4) hour work period, or major portion thereof, in violation of California Wage Order 14, and California Labor Code section 226.7, and California law;

d. Whether Defendants' failed to pay Plaintiff and the Class premium wages for missed or incomplete meal and rest breaks required by California Wage Order 14, California Labor Code section 226.7, and California law;

e. Whether Defendants violated Labor Code section 2802 by failing to provide Plaintiff and the Class with tools and equipment needed to perform their daily work functions, in violation of Wage Order 14 and California law;

f. Whether Defendants failed to timely pay all wages owed to Plaintiff and the Class upon separation of employment, in violation of California Wage Order 14, California Labor Code sections 201, 202, and 203, and California law;

g. Whether Defendants kept complete and accurate payroll records as required by the California Labor Code, including *inter alia*, Labor Code section 1174(d);

h. Whether Defendants failed to provide Plaintiff and the Class itemized wage statements that accurately reflect all gross and net wages earned, total hours worked, applicable rates of pay and the complete address of the employer, in violation of California Wage Order 14, California Labor Code section 226, and California law;

i. Whether Plaintiff and the Class are entitled to damages and/or injunctive relief pursuant to Labor Code sections 2810(g)(1)-(2) based on Defendant JDB's violation of Labor Code section 2810(a);

j. Whether Defendants engaged in unlawful and/or unfair business practices in violation of Business & Professions Code sections 17200 *et seq.* ("UCL") and are liable to Plaintiff and the Class pursuant to the UCL for restitution of unpaid or underpaid statutory and/or agreed upon regular, minimum, piece rate, premium and/or contractual wages;

k. Whether Defendants should be enjoined from maintaining and enforcing the practices and policies that are alleged to have violated Wage Order 14, the Labor Code, and California law; and

l. The appropriate amount of damages, restitution, and/or penalties earned, due, and/or owing to Plaintiff and the Class resulting from Defendants' violation of Wage Order 14, the Labor Code, and California law.

99. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against corporate defendants. A class action is superior to other available means for fair and efficient adjudication of Class Members' claims and offers significant benefits to the parties and the court. A class action will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. The individual monetary amounts due to many Class Members may not be large enough on their own for individual Class Members to obtain legal representation and relief. Moreover, a class action will serve important public interests by enabling the non-waivable statutory rights of Class Members to be effectively asserted, and fundamental public policies to be vindicated, in one proceeding. A class action will also provide a means for vindicating the rights of workers who currently provide labor to Defendants and are less likely to come forward to assert their rights based on fears of reprisal. Finally, a class action will prevent the

potential for inconsistent or contradictory judgments inherent in individual litigation and address the problems inherent in random and fragmentary enforcement.

100. Plaintiff intends to send notice to all members of the Class to the extent permitted or required by Federal Rule of Civil Procedure 23. The names and addresses of the Class are available from Defendants.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

101. In addition, Plaintiff brings this action individually and on behalf of a class of H-2A workers under the FLSA for the following similarly situated workers (the "FLSA Collective"):

> All non-exempt H-2A agricultural employees who performed field work for Defendants in the production of strawberries—including, but not limited to, tasks such as planting, cultivating, pruning, picking, and packing—in California and who were paid less than the federal minimum wage in the first pay period of the season, at any time during the period three years prior to the date of the Complaint to the present ("FLSA Collective Period").

102. Plaintiff and the FLSA Collective are or were employed by Defendants within the meaning of FLSA.

## **CLIENT EMPLOYER LIABILITY**

103. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

104. Defendant JDB is a California corporation engaged in the business of berry production, including most significantly the growing, packing, and shipping of strawberries.

105. Defendant JDB owns or leases fields in California for the purpose of strawberry production, including the fields where Plaintiff and other Class Members worked ("the JDB farms").

106. Defendant NHH supplied Plaintiff and other workers in the Class to perform labor on the JDB farms within Defendant JDB's usual course of business, that is, growing strawberries.

107. Defendant NHH functioned as a labor contractor with respect to Defendant JDB in that Defendant NHH recruited and employed Plaintiff and other workers in the Class to render services in connection with the production of strawberries by or for Defendant JDB.

108. Defendant NHH is a "labor contractor" as defined by Section 2810.3 of the California Labor Code.

109. Defendant JDB was provided Plaintiff and other workers in the Class to perform labor on the JDB farms within Defendant JDB's usual course of business.

110. At all relevant times during the Class Period, Defendant NHH supplied at least 25 workers for the JDB workforce.

111. Defendant JDB is a "client employer" as defined by Section 2810.3 of the California Labor Code with respect to all hours worked by Plaintiff and other Class Members in connection with the production of strawberries for Defendant JDB. As such, Defendant JDB shares liability for the payment of wages to Plaintiff and other Class Members.

**JOINT EMPLOYER LIABILITY**

112. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

113. The work performed for Defendant JDB by Plaintiff and other workers in the Class, namely picking and packing strawberries, is or was an integral part of Defendant JDB's overall business operation of growing, packing, and shipping strawberries, and is or was performed on premises owned or leased by Defendant JDB (the JDB farms).

114. Plaintiff, and upon information and belief other workers in the Class, spent the entirety of the strawberry season working on the JDB farms (in Plaintiff's case, until his employment was terminated).

115. The work performed by for Defendant JDB Plaintiff and other workers in the Class is or was a step in the process of strawberry production and sales.

116. Picking and packing strawberries is repetitive work requiring skills acquired with relatively little training.

117. For these and other reasons, Defendant JDB is liable as a joint employer to Plaintiff and other members of the Class.

## FIRST CLAIM FOR RELIEF

### Violation of Fair Labor Standards Act, 29 U.S.C. § 206.
### Plaintiff on Behalf of the FLSA Collective Against NHH and JDB

118. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

119. The protections of the minimum wage provisions of the 29 U.S.C. § 206, FLSA, indisputable apply to the Farmworkers. The employers must provide workers' weekly wages for all hours worked "free and clear" of the improper deductions, at a rate no lower than the minimum wage rate. 29 U.S.C. § 206(a)(1); 20 C.F.R. § 655.122(f); 29 C.F.R. §§ 531.35, 776.4.

120. Under the FLSA, an employer may not deduct, either directly or indirectly by shifting the cost, from employee wages costs incurred primarily for the employer's benefit if the deductions drive wages below the minimum wage. *See* 29 C.F.R. §§ 531.36(b) and 655.122(p)(2) [a deduction is not reasonable if it includes a profit to the employer or to any affiliated person]; *see also* 20 C.F.R. § 655.120.

121. As a condition of approval of the H-2A application and job order, employers must agree to comply with all terms and conditions established by regulation and included in the job order including those related to travel, visa, tools, and housing costs. Employers primarily benefit from complying with these provisions as they would otherwise be prohibited from employing H-2A workers.

122. Travel costs from the point of hire to the place of employment, visa costs, tools, and other materials and services incidental to carrying on the employer's business, are incident of and necessary to the employment and are not the type of expenses permitted to pass to the worker as "other facilities" under 29 C.F.R. § 531.3(d)(1).

123. Employers must provide to the worker, without charge or deposit charge,

tools, and other materials and services incidental to carrying on the employer's business and to perform the worker's duties. 29 C.F.R. § 531.3(d)(2)(i); 20 C.F.R. § 655.122(f).

124. 20 C.F.R. § 655.122(h)(1) requires an employer to pay for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer, and it notes that the FLSA applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages.

125. 20 C.F.R. § 655.122(d)(1) requires that an employer provide housing at no cost to H-2A workers. 20 C.F.R. § 654.412(d) requires that an employer provide laundry facilities to all occupants of an employer provided housing. 29 C.F.R. § 1910.142(f) requires that an employer provide a laundry tray or tub for every 30 persons, and a slop sink used for laundry.

126. At all relevant times, Defendants failed to pay Plaintiff and, on information and belief, other members of the FLSA Collective their wages for work performed off the clock at the worksite.

127. At all relevant times, Defendants indirectly deducted expenses from the minimum and contract wages due Plaintiff and, on information and belief, other members of the FLSA Collective by failing to reimburse them for transportation, lodging, visa cost, and daily travel subsistence costs expended in their trips from Mexico to Santa Maria, for costs for necessary tools and equipment, including gloves and tape, and for the cost for laundry facilities. Additionally, Defendants reduced the wages paid by making direct charges, for the house cleaning fee of $15 and van cleaning fee of $3.70.

128. All of these expenditures were primarily for the Defendants' benefit, and to comply with federal conditions of the H-2A certification. As such expenditures brought the weekly wages of members of the FLSA Collective below the applicable minimum wage for all hours worked, their imposition by Defendants violated 29 U.S.C. § 206.

129. As a result of Defendants' failure to compensate Plaintiff and members of the FLSA Class for all hours worked and to reimburse their expenses, Defendants failed

to pay minimum wages due, and Plaintiff and members of the FLSA Collective are entitled to recover those wages, plus an equal amount as liquidated damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**Failure to Pay All Contractual Wages**
**In Violation of 20 C.F.R. 655.122, *et seq*.**
**Plaintiff on Behalf of the Rule 23 Class Against NHH and JDB**

130. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

131. By operation of 8 U.S.C. § 1188 and 20 C.F.R. § 655.130(a), the terms and conditions established in the clearance order approved by the U.S. Department of Labor, in connection with the certification of an application for H-2A workers, constitutes the contract between the H-2A workers and the employer.

132. Plaintiff was not provided with a copy of his employment contract but is informed and believed that the ETA 790 Clearance Order attached hereto as Exhibit A constitutes the written contract for employment between Class Members, including Plaintiff, and Defendants. The employment contract terms between Plaintiff and Defendants were from March 10, 2018 to January 10, 2019.

133. Plaintiff is informed and believes and thereon alleges that Defendants operated under other ETA Clearance Orders that covered other seasons or time periods within the Class Period, and the terms of Class Members' employment are contained in such Clearance Orders.

134. Defendants promised Plaintiff and Class Members the higher of the AEWR in effect at the time work was performed, the prevailing wage or piece rate, and the agreed upon collective bargaining wage or the state or federal minimum wage. H-2A workers were entitled to be paid at the AEWR of $11.89 per hour for work performed in 2016, $12.57 per hour for work performed in 2017, $13.18 per hour for work performed in 2018 and $13.92 per hour for work performed in 2019, and to be paid overtime at the rate of time and one half the applicable AEWR, or double the rate of the applicable

AEWR after 8 hours of work on the seventh day of work during the workweek.

135. Plaintiff worked for Defendants from April 20, 2018 until May 12, 2018, and during this time he performed his contractual obligation.

136. Plaintiff is informed and believes that Class Members worked during the term of the contract and performed their contractual obligations.

137. Defendants breached the employment contract by failing to provide Plaintiff and, on information and belief Class Members, with a copy of the contract as required under the regulations for H-2A workers.

138. Defendants breached the employment contract with Class Members, including Plaintiff, by failing to compensate them for all compensable time under applicable state and federal laws.

139. Defendants breached the employment contract with Plaintiff and Class Members by failing to compensate them for all compensable hours worked at the contractually promised wage rates, including off-the-clock time and overtime work.

140. At all relevant times, each Defendant failed to pay Plaintiff and Class Members wages earned and due pursuant to an employment relationship and oral contract.

141. On information and belief, Defendants failed to pay Plaintiff and Class Members for all hours worked, in part, because Defendants failed to record the time when Class Members were required to wait in fields, engage in preparatory or clean up tasks before the start of his shift at Defendants' direction, and required to perform work tasks after the end of the shift without compensation.

142. Defendants breached the employment contract with Plaintiff and Class Members by failing to reimburse for travel, board, and subsistence during travel from their hometown to the place of employment to begin the work contract with Defendants.

143. Defendants breached the employment contract with Plaintiff and Class Members by failing to reimburse for tools and equipment required or necessary to perform the job.

144. Defendants breached the employment contract with Plaintiff and Class Members by failing to comply with the contractual terms requiring free housing and transportation to and from the worksites and Plaintiff and Class Members were required to pay weekly amounts for house cleaning and van cleaning, as a condition of receiving those benefits.

145. Defendants breached the express and implied terms and conditions of Plaintiff's employment contract by interfering with his use and enjoyment of the housing by imposing a no guest policy at the employer provided housing and imposing a curfew of 9:00 p.m., terms not disclosed in the work contract.

146. As a direct and proximate result of Defendants' breach of contract, Plaintiff and Class Members suffered injury, including but not limited to illegal deductions, economic loss, and travel expenses.

147. Plaintiff and the Class are entitled to and requests restitution and damages arising out of Defendants' breach of contract in amounts to be determined at trial.

## THIRD CLAIM FOR RELIEF

**Failure to Pay Overtime Wages**
**In Violation of Cal. Labor Code §§ 220, 223, 510, 558, 1194, and 1198;**
**IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140, *et seq*.**
**Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

148. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

149. Defendants violated the overtime provisions of California law, including Labor Code § 510 and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140 (Jan. 1, 2001) by failing to pay Plaintiff and, on information and belief, Class Members, for all hours worked at the required overtime rate.

150. At all relevant times, Defendants required and/or knew or should have known that Plaintiff and Class Members worked without compensation, off-the-clock, to perform duties such as preparation work before the start of the recorded shift and after the end of the recorded shift.

151. Defendants also failed to compensate Plaintiff and Class Members for travel time from the employer provided housing to the jobsite. Plaintiff and Class Members were required to be ready to be picked up by Defendants around 5:00 a.m., and once picked up they spent about 15 to 25 minutes traveling from the employer provided housing to the worksite.

152. At all relevant times, once Plaintiff and Class Members arrived at the worksite, they were required to perform off-the-clock work to prepare for harvesting.

153. Even though Plaintiff and Class Members were required to report at 5:00 a.m. and were under the control of Defendants from that time on, Defendants recorded Plaintiff's, and on information and belief, Class Members' start time to be sometime around 6:00 a.m. to 6:30 a.m.

154. At all relevant times, Plaintiff and Class Members were required to remain in the field after the harvesting and packing activities ceased to perform additional tasks or wait for the completion of those tasks by others before being transported back to the pickup and drop-off site located at the housing.

155. Plaintiff and Class Members regularly performed work and were under the direction and control of Defendants for more than ten (10) hours per day, and more than 60 hours per week.

156. At all relevant times, Defendants were required to and have failed to pay Plaintiff and , on information and belief, Class Members the required overtime premium wages earned at 1-1/2 times the regular wage for each hour over ten (10) hours per day and/ or more than 60 hours in a workweek in amounts to be proven at trial.

157. The GASPAR Defendants are liable for overtime pursuant to Labor Code § 558.1.

158. Defendants' failure to pay overtime serves as a predicate for civil penalties under PAGA.

159. Plaintiff demands wages, pre-judgment interest, and attorney's fees on behalf of the Class in amounts to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**Failure to Pay Minimum Wage for All Hours Worked**
**In Violation of Cal. Labor Code §§ 1182.12, 1194, and 1197;**
**IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140, *et seq*.**
**Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

160. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

161. Defendants failed to pay Plaintiff and, on information and belief, Class Members the legal minimum wage of $10.00 per hour for all regular hours worked on January 1, 2016 through December 31, 2017, $11.00 per hour for all regular hours worked on January 1, 2018 through December 31, 2018, and $12.00 per hour for all regular hours worked on January 1, 2019 through the present, in violation of Labor Code §§ 1182.12 and 1197; and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140 (Jan. 1, 2001).

162. At all relevant times, Plaintiff and, on information and belief, Class Members were not paid minimum wages for all hours worked, including compensable transportation time, waiting time, and other off-the-clock work before and after the start of recorded shifts.

163. Defendants failed to reimburse Plaintiff and, on information and belief, other Class Members for expenses incurred primarily for the employer's benefit, which resulted in bringing their wages below the minimum wage.

164. Defendants required Plaintiff, and on information and belief, Class Members to pay a weekly fee to clean the house and a separate weekly fee to clean the van.

165. Defendants did not provide Class Members with a laundry facility at the employer provided housing, and Plaintiff and, on information and belief, Class Members were required to pay out-of-pocket do laundry at a laundromat.

166. Plaintiff and, on information and belief, Class Members were not reimbursed for the protective gloves and adhesive tape bought to protect their hands from injury at work since Defendants failed to provide them with the necessary equipment to perform their job duties.

167. As a result of Defendants' failure to pay Plaintiff and Class Members for all hours worked, Defendants violated the state minimum wage.

168. As a result of Defendants failure to pay Plaintiff and Class Members for necessary expenses, Plaintiff and other aggrieved were paid wages at less than the minimum mandated rate.

169. The GASPAR Defendants are liable for minimum wage violations pursuant to Labor Code § 558.1.

170. Defendants' failure to pay the minimum wage serves as a predicate for civil penalties under PAGA.

171. Plaintiff and the Class are entitled to recover unpaid minimum wages due in amounts to be determined at trial, plus interest and attorney's fees.

## FIFTH CLAIM FOR RELIEF

**Liquidated Damages for Failure to Pay Minimum Wage**
**In Violation of Cal. Labor Code § 1194.2**
**Plaintiff on Behalf of the Rule 23 Class Against NHH and JDB**

172. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

173. As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff and Class Members are entitled to recover penalties in the form of liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon, pursuant to Labor Code § 1194.2. The exact amount of liquidated damages owing will be determined at trial.

## SIXTH CLAIM FOR RELIEF

**Failure to Pay All Wages Due Upon Termination**
**In Violation of Cal. Labor Code §§ 201, 202, and 203**
**Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

174. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

175. Pursuant to Labor Code §§ 201 and 202, terminated employees are entitled

to be paid all wages due upon termination in the event of a discharge or voluntary termination with requisite notice, or within 72 hours of termination in the event of a voluntary termination without notice.

176. Defendants discharged Plaintiff within the meaning of Labor Code § 201.

177. Defendants have continuously, at all times since his discharge, willfully failed to pay Plaintiff all wages earned and due, including compensable transportation time and off-the-clock work and waiting time before and after the recorded start of his shift, and rest and meal period premiums, in violation of Labor Code § 201.

178. In the alternative, to the extent that Plaintiff's termination could be considered voluntary, Defendants failed to pay Plaintiff all wages due within 72 hours, in violation of Labor Code § 202.

179. Plaintiff is informed and believes and thereon alleges that other members of the class have been denied all wages owed timely upon termination of the employment relationship, including wages for compensable travel, for off the clock work, for unpaid time and for rest and meal period premiums, in violation of Labor Code §§ 201

180. As a result of Defendants' willful failure to pay wages due in accordance with Labor Code §§ 201 and 202, Plaintiff is entitled to waiting time penalties commencing on May 12, 2018, pursuant to Labor Code § 203, in an amount to be proven at trial.

181. As a result of Defendants' willful failure to pay wages due in accordance with Labor Code §§ 201 and 202, Class Members are entitled to waiting time penalties, pursuant to Labor Code § 203, in an amount to be proven at trial.

182. The GASPAR Defendants are liable for waiting time penalties pursuant to Labor Code § 558.1.

183. Defendants' violation of Labor Code §§ 201, 202 and 203 serves as a predicate for civil penalties under PAGA.

184. Plaintiff on behalf of the Class seeks waiting time penalties pursuant to Labor Code § 203.

## SEVENTH CLAIM FOR RELIEF

**Failure to Indemnify Employees for Necessary Expenditures In Violation of Cal. Labor Code §§ 220 *et seq*., 223, 1198, and 2802; IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140 Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

185. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

186. California Labor Code § 1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

187. At all relevant times, Defendants did not pay twice the minimum wage to Plaintiff or, on information and belief, Class Members.

188. At all relevant times, Defendants were required to provide and maintain tools and equipment necessary to the performance of the job for field workers and failed to do so, including, but not limited to, protective gloves and adhesive tape to protect workers' fingers from any injury pursuant to IWC Wage Order 14-2001.

189. These tools were necessary to the completion of Plaintiff's and Class Members' duties and necessary for their protection from wounds, cuts, and other injury or damage to them.

190. Defendants did not reimburse Plaintiff or, on information and belief, Class Members for these expenditures in violation of Cal. Lab. Code § 2802(a). Plaintiff, and on information and belief, Class Members expended their own funds to pay for and maintain as applicable the necessary tools and protective gear that were, in effect, an offset against wages due to them, and were thereby injured and is entitled to recover those expenditures in an amount to be proven at trial.

191. The GASPAR Defendants are liable for reimbursements pursuant to Labor Code § 558.1.

192. Defendants' violation of Labor Code § 2802 serves as a predicate for civil penalties under PAGA.

193. As a direct and proximate cause of Defendants' failure to reimburse for expenditures, Plaintiff and, on information and belief, Class Members have suffered financial loss.

194. Plaintiff and the Class are entitled to an award of the costs expended on necessary tools and interest thereon from the date of purchase, as well as attorney fees and costs pursuant to Cal. Lab. Code § 2802(b)-(c).

**EIGHTH CLAIM FOR RELIEF**

**Failure to Provide Meal Periods**
**In Violation of Cal. Labor Code §§ 226.7, and 1198;**
**IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140**
**Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

195. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

196. IWC Wage Order 14 at § 11(A) provides, in pertinent part: "An employer may not employ an employee for a work period of more than five (5) hours without providing the employee with a meal period of not less than 30 minutes…Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."

197. IWC Wage Order 14 at § 11(B) provides: "An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

198. California Labor Code § 1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

199. California Labor Code § 226.7 requires that Defendants provide Plaintiff and Class Members with all complete meal periods and/or second meal periods specified in the applicable wage order and that Plaintiff and other aggrieved employees are entitled to

be paid one additional hour of pay per day at his regular rate of compensation as additional wages for denied meal periods.

200. At all relevant times, Defendants controlled the timing and length of meal periods. At various times during the season, Plaintiff and Class Members worked more than ten hours in a day, including uncompensated off-the-clock time, and Defendants did not provide Plaintiff or , on information and belief, Class Members with an opportunity to take a second meal period.

201. Plaintiff, and on information and belief, Class Members suffered a loss equal to their applicable hourly rate of pay times the total number of days they were not authorized and permitted to take complete meal periods and/or a second meal period when required, they have therefore not been paid all of the wages due, and they are entitled to recover that compensation in an amount to be proven at trial.

202. The GASPAR Defendants are liable for violations of the meal period requirements pursuant to Labor Code § 558.1.

203. Defendants' violation of Labor Code § 226.7 serves as a predicate for civil penalties under PAGA.

204. Plaintiff seeks premium wages pursuant to Labor Code § 226.7 for himself and the Class in amounts to be proven at trial.

## <u>NINTH CLAIM FOR RELIEF</u>

**Failure to Provide Rest Periods**
**In Violation of Cal. Labor Code §§ 226.7, and**
**IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140**
**Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

205. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

206. IWC Wage Order 14 at § 12 provides, in pertinent part: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four

(4) hours or major fraction thereof."

207. California Labor Code § 1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

208. California Labor Code § 226.7 requires that Defendants provide Plaintiff and Class Members with all complete rest periods specified in the applicable wage order and that Plaintiff and Class Members are entitled to be paid one additional hour of pay per day at their regular rate of compensation as additional wages for each workday that the rest period is denied.

209. At all relevant times, Defendants controlled the timing and length of rest periods. At various times during the season, Plaintiff and, on information and belief Class Members, worked eight or more than ten hours in a day, including uncompensated off-the-clock time, and Defendants did not provide them with a second and/or third rest period per four hours of work or major fraction thereof.

210. Plaintiff and, on information and belief, Class Members suffered a loss equal to their applicable hourly rate of pay times the total number of days they were not authorized and permitted to take a second and/or third rest period when required, they have therefore not been paid all of the wages due.

211. The GASPAR Defendants are liable for violations of the rest period requirements and pursuant to Labor Code § 558.1.

212. Defendants' violation of Labor Code § 226.7 serves as a predicate for civil penalties under PAGA.

213. Plaintiff is entitled to recover compensation pursuant to Labor Code § 226.7 for himself and the Class in an amount to be proven at trial.

**<u>TENTH CLAIM FOR RELIEF</u>**

**Failure to Provide Accurate and Complete Itemized Wage Statements**
**In Violation of Cal. Labor Code § 226**
**Plaintiff on Behalf of the Rule Class Against All Defendants**

214. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

215. California Labor Code § 226 provides that employers are required to furnish employees with accurate and complete itemized wage statements containing all items enumerated under subdivision (a).

216. At all relevant times, Defendants violated Labor Code § 226(a) by knowing and intentionally failing to report and falsely reporting for Plaintiff, and on information and belief, Class Members, the required items, including:

a. the gross and net wages earned;

b. the total hours worked,

c. all applicable hourly rates, and

d. the complete address of the employer.

217. Plaintiff cannot promptly and easily determine items from the wage statements alone including the above-stated items that are required to be provided on the itemized wage statement.

218. Pursuant to California Labor Code § 226(e), Plaintiff and Class Members are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and are entitled to an award of costs and reasonable attorneys' fees.

219. The GASPAR Defendants are liable for violations of the wage statement requirements pursuant to Labor Code § 558.1.

220. Defendants' violation of Labor Code § 226 serves as a predicate for civil penalties under PAGA.

221. Plaintiff seeks damages or penalties for himself and the Class pursuant to Labor Code § 226.

## ELEVENTH CLAIM FOR RELIEF

**Unlawful and Unfair Competition**
**In Violation of Cal. Bus. & Profs. Code §§ 17200, *et seq*.**
**Plaintiff on Behalf of the Rule 23 Class Against All Defendants**

222. Plaintiff re-alleges and incorporates by reference each preceding paragraph

of the complaint as if fully alleged herein.

223. Plaintiff sues for his own interest and on behalf of the Class pursuant to Business and Professions Code §§ 17200, *et seq*. Plaintiff and, on information and belief, Class Members suffered injury-in-fact and lost money as a result of Defendants' unlawful and unfair competition alleged herein. Plaintiff also seeks to obtain injunctive relief to enforce important rights affecting the public interest.

224. Defendants failed to pay wages owed to Plaintiff and Class Members, including for compensable travel time, waiting time and off-the-clock time before and after the recorded start time of shifts, in violation of Labor Code §§ 218, 510 and 1194, and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140 (Jan. 1, 2001).

225. Defendants failed to provide and maintain tools and equipment necessary to the performance of the job to Plaintiff and Class Members in violation of Labor Code § 2802, and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140.

226. Defendants failed to provide complete meal periods and/or second meal periods to Plaintiff and Class Members in violation of California Labor Code § 226.7, and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140.

227. Defendants failed to provide Plaintiff and Class Members required rest periods per each four hours of work or a major fraction thereof in violation of California Labor Code §§ 226.7 and 558, and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140.

228. Defendants failed to pay applicable contract wages, minimum wages, and overtime wages due for all hours worked during the relevant time period, including off-the-clock waiting time before the recorded start of his shift and reporting time, in violation of Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1198; and IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140; 29 U.S.C. § 206, 5 U.S.C. § 1188, and implementing regulations.

229. Defendants failed to provide Plaintiff and Class Members with a laundry facility in the employer provided housing.

230. Defendant failed to adequately provide handwashing facilities at the workplace in violation of 8 CCR § 3457(c)(D)(2).

231. Defendants failed to pay wages due upon termination in violation of Labor Code § 201.

232. Defendants failed to pay wages due upon termination in violation of Labor Code § 202.

233. Defendants failed to provide accurate and complete itemized wage statements, including but not limited to the total hours worked, gross and net wages earned that accurately reflect all hours worked, all applicable hourly rates and the complete address of the employer, in violation of California Labor Code §§ 226(a), 1174, and 1174.5, IWC Wage Order No. 14-2001, 8 Cal. Code of Regs. § 11140(7), and 20 C.F.R. § 655.122(k).

234. Defendants, by the acts and/or omissions alleged herein have committed and are committing unlawful and unfair competition.

235. As a result of Defendants' unlawful business practices, Plaintiff and the Class are entitled to and Plaintiff seeks restitution of unpaid wages, out of pocket expenditures, the economic value of benefits unlawfully denied to him and the Class by Defendants in an amount to be determined at trial, and a preliminary and permanent injunction enjoining Defendants to cease the unlawful and unfair business practices as heretofore alleged.

236. Plaintiff is informed and believes that Defendants continue to violate the above-referenced statutes and regulations with respect to other current and former employees and unless enjoined from doing so by this Court, will continue to do so to the detriment of the Plaintiff, other current and future employees and competing, law abiding agricultural employers.

237. Further, Defendants have been unjustly enriched as a direct result of its unlawful business practices alleged in this complaint and will continue to benefit from those practices and have unfair competitive advantage over other California agricultural

employers, including both growers and farm labor contractors, who comply with the laws described herein, to the injury of Plaintiff, the class and the general public, if allowed to retain the unpaid wages and other economic benefits due their employees.

238. Plaintiff is informed and believes that Defendants are currently or will be employing H-2A workers under the same unlawful conditions alleged in this complaint and are thereby continuing to engage in unfair competition. Therefore, Plaintiff seeks injunctive relief directing Defendants to cease their unlawful competition and come into compliance with the statutory and contractual provisions as mandated by state and federal law.

## TWELFTH CLAIM FOR RELIEF

**Enforcement of Penalties**
**Pursuant to the California Labor Code §§ 2698, *et seq*.**
**(Private Attorneys General Act)**
**By Plaintiff on Behalf of the State and Current or Former Employees Against NHH and the GASPAR Defendants**

239. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

240. Plaintiff is an aggrieved employee as defined in Labor Code § 2699.

241. Plaintiff is informed and believes and thereon alleges that Defendants committed, without limitation, the following violations of the California Labor Code against Plaintiff and other current or former H-2A employees while they were and/or are employed by Defendants:

a. Defendants violated Labor Code §§ 204, 210, 216(b), 223, 558, 1194, 1197, and 1198, 8 Cal. Code Regs. § 11140, by failing to pay Plaintiff and, on information and belief, other current and former employees of Defendants, all wages due for all hours worked, including compensable transportation time, and work performed off-the-clock.

b. Defendants violated Labor Code §§ 226(a) and 226.3 by failing to provide Plaintiff and, on information and belief, other current and former employees of Defendants, with an accurate itemized statement in writing providing

required information, including items regarding gross wages earned, total hours worked by the employee, and net wages earned with each periodic payment of wages made by Defendants to Plaintiff and, on information and belief, other current and former employees of Defendants.

c. Defendants violated Labor Code § 1174 by failing to maintain accurate and complete payroll records showing the daily hours worked by Plaintiff, including work performed off-the-clock, and, on information and belief, by other current and former employees of Defendants.

d. Defendants violated Labor Code §§ 201 and 202 by failing to pay Plaintiff and, on information and belief, other current and former employees of Defendants, all wages due, including wages for work performed off-the-clock, on the date of the employee's involuntary termination or within 72 hours of the employee's voluntary termination.

e. Defendants violated Labor Code §§ 226.7 and 558 by failing to provide to Plaintiff and, on information and belief, other aggrieved employees of Defendants, complete meal periods and/or second meal periods in accordance with IWC Wage Order 14-2001.

f. Defendants violated Labor Code §§ 226.7 and 558 by failing to provide Plaintiff and, on information and belief, other aggrieved employees required rest periods per each four hours of work or a major fraction thereof in accordance with IWC Wage Order No. 14-2001.

g. Defendants violated Labor Code § 223 by paying Plaintiff, and on information and belief, other current and former other aggrieved employees of each Defendant, at rates lower than the rates established by statute for all regular hours worked and all overtime hours of work performed, in excess of 10 hours in a day and/or hours worked on the seventh day of the workweek, including work performed off-the-clock, and failing to pay Plaintiffs at rates based on the AEWR for all hours worked pursuant to the H-2A Act.

h. Defendants violated Labor Code § 225.5 for paying Plaintiff and on information and belief, other aggrieved employees a lower rate than rates established by statute.

i. Defendants violated Labor Code § 2802 by failing to indemnify Plaintiff and, on information and belief, other aggrieved employees of Defendants, for the purchase of necessary tools for the completion of their duties in the harvesting of strawberries and sorting strawberry filled boxes, including, without limitation, protective gloves and adhesive tape as applicable; for the cost of obtaining their visa and travel expenses necessary to travel from Mexico to the US for work; and for cleaning fees to clean the employer related housing and van used to transport them. Defendants did not reimburse Plaintiff and, on information and belief, other current and former employees, for these expenditures, that were, in effect, an offset against wages due to them.

j. Defendants violated provisions of IWC Wage Order 14-2001 and Labor Code § 1197 by failing to pay Plaintiff and, on information and belief, other aggrieved employees the minimum wage due for all hours worked, including failing to pay Plaintiff and other aggrieved employees for compensable transportation time, waiting time, and work performed off-the-clock.

k. Defendants violated provisions of IWC Wage Order 14-2001 and Labor Code § 558 by failing to pay Plaintiff for all hours worked, including; failing to pay Plaintiff and, on information and belief, other aggrieved employees for overtime for all hours worked, including compensable transportation time and work performed off-the-clock that resulted in more than 10 hours in a workday and/or 60 hours in a workweek; failing to authorize and permit meal periods specified by the Wage Order; failing to authorize and permit rest periods specified by the Wage Order; and failing to provide and maintain necessary tools and equipment.

l. Defendants failed to furnish employment that is safe and healthful for Plaintiff and other H-2A workers in violation of Labor Code § 6400, *et seq*.

m. Defendants failed to furnish a safe and healthful employment by not providing field sanitation to Plaintiff and other aggrieved employees, in violation of 8 C.C.R. § 3457, and Labor Code §§ 1198, 6400 *et seq*., including §§ 6407 and 6712.

n. Defendants failed to furnish a safe and healthful employment by imposing a production pace that was unreasonably excessive, and Plaintiff and other aggrieved employees were required to work at speeds that increased the risk of accidents, injury, and heat illness since it exacerbated outdoor working conditions and body heat production. Plaintiff was forced to forgo using the restroom during the workday due to time pressures. Defendants' failure to identify work hazards and respond accordingly to minimize preventable hazards were in violation of Labor Code § 6400, *et seq*.

o. Defendants failed to adequately take the necessary steps to prevent heat illness in violation of labor Code § 6400, *et seq*., and 8 Cal. Code Regs. § 3395.

242. Pursuant to Labor Code § 2699.3, on April 11, 2019, Plaintiff submitted a written notice by certified mail to Defendants and the Labor and Work Force Development Agency (LWDA) and the Division of Occupational Safety and Health (DOSH) of the factual and legal basis for the labor law violations alleged in this complaint.

243. Pursuant to Labor Code § 2699.3(a)(2)(B), the LWDA has failed to timely notify the aggrieved employees of its intent to investigate the alleged violations. As such, Plaintiff commences a civil action in accordance with Labor Code §§ 2699, *et seq*., including 2699.3(a).

244. On April 11, 2019, Plaintiff notified the California Division of Occupational Safety & Health (DOSH) of the violations of the Labor Code including §§ 6400, 6401,

6403, 6407, and 6712. In a letter dated April 19, 2019, DOSH notified Plaintiff it would not conduct an investigation and thus, no investigation of the complaint was conducted within 14 calendar days as provided by Labor Code § 6309. Plaintiff has not received any notice that the violations have been cured. Therefore, Plaintiff seeks to enforce penalties applicable to these violations as provided in Labor Code §§ 2699(b), 2699.3(b)(2)(B), and 2699(c).

## THIRTEENTH CLAIM FOR RELIEF

### Breach of Implied Covenant of Quiet Use and Enjoyment
### By Plaintiff, individually, Against NHH

245. Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein.

246. At all relevant times, Plaintiff and Defendants entered into an employment contract, which included employer provided housing as a term of the employment contract.

247. The employment contract terms were from March 10, 2018 until January 10, 2019.

248. Plaintiff and fourteen (14) other aggrieved employees resided in the employer provided housing located at 937 N. Dejoy St., Santa Maria, California 93458.

249. Implied in Plaintiff's employment contract with Defendants is the covenant of quiet enjoyment.

250. At all relevant times, Plaintiff met all his obligations under the employment contract.

251. Defendants breached this implied covenant of quiet enjoyment by imposing a no guest policy and curfew of 9:00 p.m. at the employer provided housing, terms not disclosed in the employment contract.

252. Defendants also breached this implied covenant of quiet enjoyment by imposing a cleaning fee of $15.00 per week to clean the residence, a term not disclosed in

the employment contract. Plaintiff and other aggrieved employees paid this cleaning fee in cash after receiving their pay checks.

253. As a proximate result of Defendants' breach of the covenant of quiet enjoyment, Plaintiff lost use and enjoyment of his employer provided housing.

## ATTORNEYS' FEES AND COSTS

Plaintiff is entitled to fees and costs, pursuant to California law, including, without limitation, Labor Code §§ 226, 2699, 2802, and 1194, California Code Civ. Proc. § 1021.5, and the FLSA, 29 U.S.C. § 216(b). Enforcement of statutory provisions enacted to protect workers and to ensure prompt payment of wages due employees is a fundamental public interest in California. Consequently, Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest and will confer a significant benefit upon the public.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

1. That the Court assume supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367;
2. That the Court certify the classes defined herein;
3. For an order appointing Plaintiff as class representative, and Plaintiff's Counsel as class counsel;

**AS TO THE FIRST CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the FLSA Collective for actual, incidental, and consequential damages in an amount to be determined at trial.

2. Awards to Plaintiff for liquidated damages, in an amount to be proven at trial.

3. Award of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 216(b).

**AS TO THE SECOND CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class for actual, incidental, and consequential damages arising out of Defendants' breach of the employment contract, in an amount to be determined at trial.

2. Awards for restitution to Plaintiff and the Rule 23 Class, in an amount to be proven at trial.

**AS TO THE THIRD CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class for unpaid overtime in an amount equal to one and a half the hourly rate and/or double time the hourly rate, in an amount to be determined at trial, plus pre-judgment interest on that amount.

2. Awards to Plaintiff for attorneys' fees under Labor Code § 1194.

**AS TO THE FOURTH CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class for the unpaid balance of the full amount of the minimum wages due, in an amount to be determined at trial, plus pre-judgment interest on that amount.

2. Awards to Plaintiff for attorneys' fees under Labor Code § 1194.

**AS TO THE FIFTH CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class for liquidated damages in an amount equal to the full amount of unpaid minimum wages, in an amount to be proven at trial, plus pre-judgment interest on that amount.

**AS TO THE SIXTH CLAIM FOR RELIEF:**

1. Awards to Plaintiff of waiting time penalties in an amount equal to thirty (30) times Plaintiff's daily rate of pay commencing May 12, 2018, pursuant to Labor Code § 203, in an amount to be proven at trial.

2. In the alternative, awards to Plaintiff of waiting time penalties in an amount equal to thirty (30) times Plaintiff's daily rate of pay commencing 72 hours after his voluntary quit on or about May 12, 2018.

3. Awards to the Rule 23 Class of waiting time penalties in an amount equal to thirty (30) times Class Members' daily rate of pay, pursuant to Labor Code § 203, in an amount to be proven at trial.

**AS TO THE SEVENTH CLAIM FOR RELIEF:**

1. Awards for reimbursements to Plaintiff and the Rule 23 Class, in an amount to be proven at trial, plus pre-judgment interest on that amount.

2. Attorney's fees pursuant to Labor Code § 2802.

**AS TO THE EIGHTH CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class in an amount equal to one hour of pay for each meal period that was not provided, in an amount to be proven at trial.

**AS TO THE NINTH CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class in an amount equal to one hour of pay for each rest period that was not provided, in an amount to be proven at trial.

**AS TO THE TENTH CLAIM FOR RELIEF:**

1. Awards to Plaintiff and the Rule 23 Class for each pay period where Defendants failed to provide an accurate and complete itemized wage statements, in an amount to be proven at trial.

2. Attorney's fees pursuant to Labor Code § 226.

**AS TO THE ELEVENHTH CLAIM FOR RELIEF:**

1. Awards of restitution to Plaintiff and the Rule 23 Class in amounts to be proven at trial.

Declaratory relief that Defendants' conduct violates all applicable California labor laws.

2. A preliminary and permanent injunction ordering Defendants to cease all unlawful and/or unfair business practices as heretofore alleged.

3. A preliminary and permanent injunction ordering Defendants to provide accurate and complete itemized wage statements in compliance with Labor Code § 226, subdivision (a), pursuant to Labor Code § 226, subdivision (h).

**AS TO THE TWELFTH CLAIM FOR RELIEF:**

1. Enforcement of PAGA penalties arising from violations suffered by Plaintiff and the other aggrieved employees, including, without limitations, penalties under Labor Code §§ 210, 226.3, Labor Code § 2699(f); Labor Code § 558, and Labor Code § 1197.1.

2. Attorney's fees pursuant to Labor Code § 2699.

**AS TO THE THIRTEENTH CLAIM FOR RELIEF:**

1. Awards for consequential and economic loss, in an amount to be proven at trial.

**AS TO ALL CAUSES OF ACTION:**

An award of:

1. Cost of suit, generally and pursuant to Labor Code §§ 226, 2699, 2802, and 1194, Code Civ. Proc. § 1021.5 and 29 U.S.C. § 216(b).

2. Attorneys' fees pursuant to Labor Code §§ 226, 2699, 2802, and 1194, Code Civ. Proc. § 1021.5, and 29 U.S.C. § 216;

3. Pre-judgment interest as authorized under the law;

4. Post-judgment interest as authorized under the law; and

5. Such other and further relief as the Court deems just and proper.

Dated: December 16, 2019

Respectfully Submitted,

ADVOCATES FOR WORKER RIGHTS LLP

/s/

Marco A. Palau
Attorneys for Plaintiff

# Exhibit A

U.S. Department Labor
Employment and Training Administration

OMB Control No. 1205-0134
Expiration Date: March 31, 2019

# Agricultural and Food Processing Clearance Order ETA Form 790
# Orden de Empleo para Obreros/Trabajadores Agricolas y Procesamiento de Alimentos

(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)
(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)

1. Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ):

New Hope Harvesting, LLC.
946 W. McElhany Ave.
Santa Maria, CA 93458-2753
****THE EMPLOYER IS A FIXED CITE EMPLOYER****

a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador:

81-0768337

b) Telephone Number / Número de Teléfono:

805-478-4469

c) Fax Number / Número de Fax:

805-922-1059

d) E-mail Address / Dirección de Correo Electrónico:

newhopeharvestingllc@gmail.com

2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo:

New Hope Harvesting, LLC is a fixed site employer who operates the land it leases from JDP Pro., Inc. The work site locations are as follows:

1) Airport Ranch 3,
The Santa Maria Public Airport
Santa Maria, CA 93454

2) Airport Ranch 4,
The Santa Maria Public Airport
Santa Maria, CA 93454

Please see attachment for directions.

3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda:

946 W. McElhany Ave
Santa Maria, CA 93458
(10 Employees)

937 North DeJoy Street
Santa Maria, CA 93458
(15 Employees)

1021 W. Alvin
Santa Maria, CA 93458
(15 Employees)

918 Nita Ct.
Santa Maria, CA 93458
(10 Employees)

a) Description of Housing / Descripción de la vivienda:

Furnished Conventional Frame Housing.

Housing is provided at no cost to non-commuting workers in accordance with (20 C.F.R. 655.22 (d) and (i). "Non-commuting workers" are those workers who are not reasonably able to travel to and from the residence he/she occupied at the time of employment offer each work day. Housing will be provided to workers only. No person who is not an employee and has not been assigned housing will be permitted to occupy the housing.

See "Attachment 1 to ETA 790", item 3.a/ver "Adjunto 1 a ETA 790", articulo 3.a.

Questions regarding housing and scheduling of inspection, should be directed to Mr. Guadalupe Gaspar with New Hope Harvesting, LLC. at 805-478-4469.

**Nos. 4 through 8 for STATE USE ONLY**
**Números 4 a 8 para USO ESTATAL**

4. SOC (O'NET/OES) Occupational Code / Código Industrial: 45-2092

a. SOC (ONET/OES) Occupational Title / Titulo Ocupacional: Farmworker, Laborer, Crop

5. Job Order No. / Num. de Orden de Empleo: 15789325

6. Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radico la oferta (incluya el número de teléfono): Santa Maria WRC 1410 S. Broadway, Suite A Santa Maria, CA 93454

a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya el número de teléfono de su linea directa): EDD Representative: (805) 614-1550

7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo: 01/16/18

8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo: 07/16/18

9. Anticipated Period of Employment / Periodo anticipado o previsto de Empleo

From / Desde: 03/10/2018 To / Hasta: 01/10/2019

10. Number of Workers Requested / Número de Trabajadores Solicitados:

50

11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 45

| | | | |
|---|---|---|---|
| Sunday / Domingo | 0 | Thursday / Jueves | 7.5 |
| Monday / Lunes | 7.5 | Friday / Viernes | 7.5 |
| Tuesday / Martes | 7.5 | Saturday / Sábado | 7.5 |
| Wednesday / Miércoles | 7.5 | | |

12. Anticipated range of hours for different seasonal activities: / Rango previsto de horas par alas diferentes actividades de la temporada:

45 It is anticipated that all seasonal activities shall require approximately 7.5-10 hours of labor per day/es anticipado que el labor sera de 7.5-10 horas diarias.

13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de:

Employer / Empleador: Yes / Si ☒ No ☐

RECEIVED
JAN 4 2018

14. Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al dia a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

In addition to providing free cooking and kitchen facilities, the employer will provide free transportation to workers into the nearest city, no less then once a week for supplies and/or banking (for workers for whom housing must be provided).

Should rental and/or public accommodations be listed in Item 3, the employer attests that such housing complies with all local, State, or Federal housing safety standards pursuant to 20 CFR section 655.122(d)(1)(ii). All housing charges for rental will be paid by the employer directly to the owner or operator of the rental and/or public accommodation unit.

Should housing be provided by the employer, the employer attests that such housing complies with all local, State, or Federal housing safety standards pursuant to 20 CFR section 655.122(d)(1)(i).

****The employer will provide a copy of the work contract no later than the first work day.(20 C.F.R. 655.12)****

Spanish

Ademas de proveer cocina y las facilidades gratis, el empleador proveerá transportación gratuita a los empleados de y hasta la ciudad mas cercana, no menos de una vez por semana para comprar suministros/ir al banco (para los empleados a quienes se les deba de proveer vivienda.)

En caso de alquiler y/o alojamiento proporcionada por el empleador, el empleador da fe que dicha vivienda cumple con los estándares de seguridad local, Estatal y Federal de conformidad con 20 CFR 655.122(d)(1)(i).

En caso de alquiler y/o alojamiento proporcionada por el empleador, el empleador da fe que dicha vivienda cumple con los estándares de seguridad local, Estatal y Federal de conformidad con 20 CFR 655.122(d)(1)(i).

****El empleador proporcionará una copia del contrato de trabajo a más tardar el primer dia laborable.(20 C.F.R. 655.12)****

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes - (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See instructions for more details / Vea las instrucciones para más detalles.

New Hope Harvesting, LLC will conduct positive recruitment efforts to find willing and capable temporary agricultural field workers. New Hope Harvesting, LLC, agrees to follow all of the assurances and obligations set forth in 20 C.F.R. 655.135. The actual employment offer is at the sole discretion of the employer. Referrals will be accepted from the State Workforce Agencies (SWAs), directly from applicants, walk-ins, gate hires, and from other sources. SWA's should thoroughly familiarize each applicant with the job specifications and terms and conditions of employment before a referral is made. Workers must meet all of the following criteria:

1. Are available and indicate willingness to work for an entire season.
2. Have transportation to job site at start of season for non-local workers and daily for local workers.
3. Have been fully apprised by the local employment office of the terms, conditions, and nature of the employment.
4. Are legally entitled to work in the United States.
5. Are able, willing, and qualified to perform the work.

Workers must possess documentation required to enable employer to comply with the employment verification requirements of IRCA. Accurate completion of Form I-9 will be required of each worker within (3) days of employment pursuant to U.S. law.

*****Pursuant to 20 C.F.R. 655.122(a), the employer must offer to the US workers no less then the same benefits, wages, and working conditions that the mepleory is offering, inner to offer, or will provide to the H-2A workers.*****

Spanish

New Hope Harvesting, LLC llevará a cabo esfuerzos de reclutamiento positivos para encontrar trabajadores agrícolas temporales capaces y dispuestos de trabajar. New Hope Harvesting, LLC, acepta las obligaciones establecidas en 20 C.F.R. 655.135. El ofrecimiento de trabajo actual se deja a discreción del empleador. Se aceptan recomendaciones de las Agencias de Trabajo Estatales (SWAs), directamente de los solicitantes, sin cita, contratados al llegar y de otros medios. Las SWAs deberán estar completamente familiarizados con cada solicitante con las especificaciones de trabajo y los términos y condiciones del empleo antes de realizar la recomendación. Los empleados deberán cumplir con los siguiente criterios:

1. Se encuentran disponible e indica el deseo de trabajar la temporada completa.
2. Que tengan transportación al lugar del trabajo al inicio de la temporada para los empleados no locales y diariamente para los empleados locales.
3. Que hayan sido completamente instruidos por la oficina local de empleo de los términos, condiciones y naturales del empleo.
4. Que estén legalmente autorizados de trabajar en los Estados Unidos.
5. Estar capaces, deseosos y calificados para desarrollar el trabajo.

Los empleados deberán poseer documentación requerida que permita al empleador a cumplir con la verificación de requisitos del empleo al IRCA. El llenado correcto de la forma I-9 sera requerida para cada trabajador en los siguientes (3) días del empleo de acuerdo a las leyes de los Estados Unidos.

***** De conformidad con 20 C.F.R. 655.122 (a), el empleador debe ofrecer a los trabajadores de EE. UU. No menos de los mismos beneficios, salarios y condiciones de trabajo que ofrece o proporcionar a los trabajadores de H-2A. *****

See "Attachment 1 to ETA 790" Item 15/ver "Adjunto a ETA 790" artículo 15.

16. Job description and requirements / Descripción y requisitos del trabajo:

This job requires an employee to handle a variety of manual labor, including but not limited to tasks associated with commodity production and harvest activities. Workers must be able to perform manual activities with accuracy and efficiency. Crops grown on the farm include Strawberries. Worker cannot be color blind due to the need to distinguish colors of crops for proper ripeness and maturity, able to use shears, clipper, and other agricultural tools, no smoking, illegal drugs, alcohol, or weapon of any sort in the housing or field.

Spanish - Este trabajo requiere que el trabajador haga trabajos manuales asociados con la comodidad de la producción y actividades de cosecha. Los empleados deberán ser capaces de desarrollar actividades manuales con precision y eficiencia. Las cosechas que se cultivan en son Fresas.

See "Attachment 1 to ETA 790", Item 16/ver "Adjunto 1 a ETA 790", artículo 16.

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si ☒ No ☐ If yes, number of months preferred: / Si es así, numero de meses de experiencia: 1

2. Check all requirements that apply:

- ☐ Certification/License Requirements / Certificación/Licencia Requisitos
- ☐ Driver Requirements / Requisitos del conductor
- ☐ Employer Will Train / Empleador entrenará o adiestrará
- ☐ Extensive Sitting / Estar sentado largos ratos
- ☒ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
- ☒ Lifting requirement / Levantar o Cargar 60 lbs./libras
- ☒ Repetitive Movements / Movimientos repetitivos
- ☐ Criminal Background Check / Verificación de antecedentes penales
- ☐ Drug Screen / Detección de Drogas
- ☒ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
- ☒ Extensive Walking / Caminar por largos ratos
- ☒ Frequent Stooping / Inclinándose o agachándose con frecuencia
- ☐ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio

17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)

| Crop Activities / Cultivos | Hourly Wage / Salario por Hora | Piece Rate / Unit(s) / Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) / Pagos Especiales (Bono, etc.) | Deductions* / Deducciones | Yes/Si | No | Pay Period / Periodo de Pago |
|---|---|---|---|---|---|---|---|
| Strawberries | $ 13.18 | $ 1.60 Per Box (Fresh Market) | | Social Security / Seguro Social | ☒ | ☐ | Weekly / Semana ☒ |
| | $ | $ 2.65 per box (Juicing and Processing) | | Federal Tax / Impuestos Federales | ☒ | ☐ | |
| | $ | $ | | State Tax /Impuestos Estatales | ☒ | ☐ | Bi-weekly/ Quincenal ☐ |
| | $ | $ | | Meals / Comidas | ☐ | ☒ | |
| | $ | $ | | *Other (specify) / Otro (especifica) | ☒ | ☐ | Monthly/Mensual ☐ |
| | | | | | | | Other/Otro ☐ |

* Estimated Hourly at $1.60 = $12.80
**Estimated Houry at $2.65 = $13.26

* Other deductions, long distance phone calls and damage to employer's tools

18. More Details About the Pay / Mas Detalles Sobre el Pago:

The employer guarantees to offer, advertise and pay a wage defined as the highest of the USDOL -promulgated AEWR, the prevailing hourly wage or piece rate, an agreed-upon collective bargaining wage (this employer is not subject to a collective bargaining agreement) or the Federal or State minimum wage in effect at the time the work is subject to the provisions of the job order is performed.

The employer will pay overtime pay for workers who work more than 10 hours per day and for the first 8 hours on the seventh day of work and double the regular pay after 8 hours of work on the seventh day of work.

See "Attachment 1 to ETA 790" item 18/ver "Adjunto a ETA 790" articulo 18.

19. Transportation Arrangements / Arreglos de Transportación

The employer will reimburse the worker in the first workweek for costs incurred by the worker for the visa application fees, border crossing fees, transportation costs, and reasonable subsistence from the place from which the worker departed to work for the employer to the place of employment, to the extent that such worker-borne expenditures reduce the worker's earnings below the FLSA minimum wage in the first workweek. Pursuant to CFR 655.122(h)(1), the employer will reimburse the worker in full for aforementioned transportation cost and reasonable subsistence not later than the halfway point in the work contract ("50% period") if such payment was not already paid in full to the worker prior to the 50% period. The minimum travel subsistence of $12.07 per day or the current minimum subsistence amount published by the Federal Register will be paid to workers who cannot provide receipts, and the maximum travel subsistence of $51.00 per day or the current maximum subsistence amount published in the Federal Register will be paid to workers with acceptable receipts. The transportation reimbursement shall be calculated on the worker's actual cost but no more than the most economical and reasonable similar common carrier transportation charges for the distance involved.

El empleador reembolsara al primer dia del trabajo por los costos realizados por el trabajador por el costo de la solicitud de visa, costo de cruce fronterizo, costo de transportacion y subsistencia razonable del lugar de donde el empleado partio para trabajar para el empleador hasta el lugar del empleo, al grado que los gastos realizados por el empleado el total del antes mencionado costo de transportacion y la subsistencia razonable a mas tardar a la mitad del contracto de trabjao "periodo 50%"), si dicho pago no se ha pagado por completo durante el period del 50%. La subsistencia minima de viaje de $12.07 por dia o la subsistencia minima actual publicada por el Registro Federal pagado a los trabajadores que no puedan proveer recibos, y el maximo de subsistencia de $51.00 por dia o la subsistencia maxima actual publicada por el Registro Federal sera pagado a los empleados que puedan presentar recibos. El reembolso de la transportacion sera calculada en el costo actual del empleado, pero no mayor que 1.medio de transporte mas economico y razonable en la distancia involucrada.

See "Attachment 1 to ETA 790" item 19/ver "Adjunto 1 a ETA 790" articulo 19

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)? Yes / Si ☐ No ☒

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Si," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores? Yes/Si ☒ No ☐

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador: Yes/Si ☒ No ☐

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo alguno a los trabajadores? Yes/Si ☒ No ☐

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno".)

None/Ninguno

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".)

None/Ninguno

26. Is this job order to be placed in connection with a future Application for Temporary Employment Certification for H-2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Si ☒ No ☐

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

Guadalupe Gaspar/Owner ("New Hope Harvesting, LLC.")

Employer's Printed Name & Title / Nombre y Titulo en Letra de Molde/Imprenta del Empleador

[signature]

Employer's Signature / Firma y Titulo del Empleador

12/19/2017

Date / Fecha

**READ CAREFULLY.** In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

**LEA CON CUIDADO.** En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

**PUBLIC BURDEN STATEMENT**
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

**DECLARACION DE CARGA PÚBLICA**
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

28. Use this section to provide additional supporting information (including section Box number). Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el numero de la sección e incluya archivos adjuntos, si es necesario.

Continued on Attachment 1 to ETA 790
Guadalupe Gaspar "New Hope Harvesting, LLC."
Page 1 of 9.

Item 3.a. Location and Description of Housing. (continued from form ETA 790, page 1, Item 3.)

Employer retains possession and control of the housing premises at all times and workers, if provided housing under the terms of this agreement, shall vacate the housing promptly upon termination of employment with the employer who provides the housing, in accordance with state law.

Housing will be clean and in compliance with applicable federal housing standards or local rental housing standards when made available for occupancy. If one has not already been perfomed at the time of this filing, New Hope Harvesting, LLC. requests a timely inspection of employer-provided worker housing by representatives of the State Workforce Agency, the State Health Department and/or the US Employment and Training Administration to verify the condition of such housing so as to ensure that all worker housing meets standards no later than thirty (30) days prior to occupancy.

Workers occupying the housing will be responsible for maintaining the housing and their living quarters in a neat, clean manner.

Dining/full kitchen/cooking facilities and other common areas will be shared with all workers.

**** Laundry services will be provided at no cost to the workers who will not have free access to do their laundry.****

Item 11. Anticipated Hours of Work Per Week. (continued from ETA 790, page 1, Item 11.)

The work day is from 7:00 AM until 3:00 PM. Monday through Friday and 7:00 AM until 3:00 PM. on Saturday, with an unpaid lunch break (7.5 hours/day and 7.5/hours on Saturday) The worker may be requested to but not required to work as much as 7.5 to 10 hours per day and/or on the worker's Sabbath, depending on weather and other conditions. Extreme heat, cold or drought may affect working hours. Employer will offer 45 hours/week, weather and crop conditions permitting. Worker will report to work at designated time and place as directed by employer each day.

**20 CFR 653.501**
**Assurances**

**INTRASTATE AND INTERSTATE CLEARANCE ORDER**

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 11 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

Employer's Name Guadalupe Gaspar Date: 12/24/2017

Employer's Signature Guadalupe Gaspar

**Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.**

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 2 of 9.**

**Employer**
Guadalupe Gaspar "New Hope Harvesting, LLC."
946 W. McElhany Ave.
Santa Maria, CA 93458
805-478-4469

Applicants will be interviewed by telephone at the time of referral or as soon thereafter as possible. If a holding office plans to refer several applicants at the same time, it is requested that the employer be advised in advance and a time scheduled for the interview. SWA offices from outside the local calling area may use the collect telephone calling information provided in Item 13.

A hiring decision will be communicated directly to the applicant at the telephone number, address, e-mail address, or other contact information in the even that such a decision cannot be rendered at the time of the interview. The applicant should be advised to stay in touch with the referring SWA office in any case.

Guadalupe Gaspar "New Hope Harvesting, LCC." will abide by the assurances set forth in 20 CFR section 655.135 including but not limited to specific regulations regarding hiring process, positive recruitment, compliance with all applicable Federal, State and local laws, and all specific obligations set forth in sub-part (a) through (l) for all workers who apply and/ or are hired to perform the specific work described in this clearance order.

If before the expiration date specified in the work contract, the services of the worker are no longer required for reasons beyond our control due to fire, weather, or other Act of God that makes fulfillment of the contract impossible, the employer may terminate the work contract. Whether such an event constitutes a contact impossibility will be detrained by the CO. In the even of such termination of the contract, New Hope Harvesting, will fulfill a three-fourths guarantee for the time that has elapsed form the start of the work contract to the time of its termination., as described in paragraph (i)(1) of 20 C.F.R. 655.122(o).

New Hope Harvesting will make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable. If such transfer is not affected, New Hope Harvesting will either: 1) Return the worker, at our expense to the place from which the worker came from or transport the worker to another certified H2A employer, whichever the worker prefers; 2) Reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the places of employment; and 3) Pay the worker for any costs incurred by the work for transportation and daily subsistence at the employer's place of employment in compliance with 20 C.F.R. section 644.122(o)).

///
///

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 3 of 9.**

Item 16 Job Specification (continued from ETA 790, page, 3 item 16.)
Performs a variety of manual tasks associated with the cultivating and harvesting of Strawberry production, including but not limited to planting, cultivating crops for production, perform hand cultivation tasks, keep count of harvested and loaded crops, ensuring accuracy of all counts, and other record keeping, pick crops from plant or use knife to remove crops from plant according to size, color, shape and degree of maturity, may separate crops according to size and uniformity and place in container, close container after packing and stacking full containers according to size, and harvesting crops.

Workers will assist in loading/unloading crops or materials weighing up to and including 60 lbs. Workers must be able to lift such weights to a height of five (5) feet over the course of the work day. Workers should be able to work on their feet and or bent over for longer period of time. Allergies to ragweed, goldenrod, insect spray, related chemicals etc. may affect workers' ability to perform the job. Workers are exposed to wet weather early in the morning through the heat of the day, working in fields. Temperatures may range from 10 to 100 F. Workers may be required to work during occasional showers not severe enough to stop field operations. Workers should be physically able to do the work required with or without reasonable accommodations. Saturday work required. In addition, workers may be required to perform variable tasks such as the following: irrigation, ditching, shoveling, hoeing, hauling, ground preparation, and other tasks related to general farming.

Dimensions and Weight of the Containers

Strawberries: Dimension are 20" X 12" X 3". Empty Container weighs about .5 pounds. Filled container weights about 8 pounds.

Employer assures that workers will be provided transportation from living quarters to work site every day (for workers who must be provided housing under the applicable regulations.)

Persons seeking employment must be available for the entire period requested by the employer. Successful applicants will be subject to a trial period of up to five days during which their performance of required tasks will be evaluated. If the performance during the trial period is not acceptable to the employer the worker's employment will be terminated. Training will be provided in the field by foreman during the first week of an employee's work. Workers will be provided a 3day training or break-in period after which they must demonstrate the ability to perform the job duties defined heroine. (Workers must reach production standards by the fifth day).

Because average picking rate of a work varies through the season base on weather, fruit quantity, size, and variety, and other fates there is no consent minimum number of bosses the are required to be picked thorough the season. (i.e. 5-6 cartons an hour is appropriate in the beginning of a season when the fruit quantity is light, but this amount may change when the quantity of fruit increases at peak harvest. 12-14 cartons are the maximum production send that will be required.) Therefore, workers will

be expected to pick a minimum number of cartons per hour which is determined by comparing.a workers hourly productivity to other workers assigned to the same commodity, crop variety, field site and location within a field site and at the time that work is performed. Employer will review workers' productivity at the end of a given period and not on a daily basis. If workers fail to keep up with the average minimum standard as defined herein, workers may be offered alternate work, if available, or, after notice, workers may be terminated for cause.

Employer retains the right to discharge an obviously unqualified worker, malingerer or recalcitrant worker who is physically able but does not demonstrate the willfulness to perform the work necessary for the the employer to grow a premium quality product.

All terms and conditions included in the job order will apply equally to all workers, both U.S. Workers and H-2A workers, employed in the occupation described in this clearance order.

**Item 18. Wage Rates, Special Pay Information and Deductions. (continued from ETA 790, page 4., item 18.**

This guaranteed wage will not be based on commission, bonuses, or other incentives.

In the event the USDOL decreased the stated AEWR for any reasons during the pendency of the employer's positive recruitment and term of labor certification in the instant application, the employer will correspondingly reduce his offered/paid hourly wage rate so long as the newer lower AEWR remains the highest of the aforementioned rates in effect at the time work is performed. In the event that the state workforce agency promulgates an hourly wage rate higher than the federal AEWR which is subsequently superseded by a prevailing wage rate identified by industry or employer provided countervailing survey, accepted and approved by the USDOL, the employer reserves the right to pay the lower rate at his discretion but in any case not less than the highest of the aforementioned rates in effect a the time the work is performed.

Piece rate: Piece rate: $1.60 per box for Fresh Market, and $2.65 per box for Juicing and Processing.
* Estimated hourly at $1.60 per boss is $12.80; Estimated hourly $2.65 per box is $13.25.

The employer guarantees to offer the workers employment for at least three-fourths (¾ ) of the work hours of the total period during which the work order and all extensions thereof are in effect, beginning with the first work day after arrival of the workers at the place of employment and ending on the termination date specified in the work order or its extension, if any. If the employer offers the worker during such period less employment than required under this provisions, the worker will be paid the amount he/she would have earned had he/she, in fact, worked for the guaranteed number of hours. Any employee who is terminated for cause will not be entitled to this guarantee.

///

///

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 5 of 9.**

If, before the expiration date specified in this clearance order the services of the worker are no longer required for reasons beyond the control of the employer due to fire, or other Act of God that makes the

fulfillment of the contract impossible, the employer may terminate the work contract. Whether such constitutes a contract impossibility will be determined by the Certifying Officer in accordance with law. In the event of such termination of a contract, the employer will fulfill the three-fourths (3/4) guarantee for the time that has elapsed from the first day of employment to the time of its termination as described in 20 CFR section 655.122 (I). The employer will make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable. If such transfer is not effected, the employer will:

1. Return the worker, at the employer's expense, to the place of which the worker (disregarding intervening employment) came to work for the employer, or transport the worker to the worker's next certified H-2A employer, whichever the workers prefers;

2. Reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment; and

3. Pay the worker for any costs incurred by the worker for transportation and daily subsistence to that employer's place of employment, if such payments were not already paid to the worker prior to the separation of employment. Daily subsistence must be computed as set forth in 20 CFR section 655.122(h). The amount of the transportation payment will equal the most economical and reasonable common carrier transportation charges for the distance involved.

Employer will provide without charge tools, supplies, and equipment necessary to perform duties assigned.

Pursuant to 20 CFR section 653.501(d)(ii)(v)(D), unless the employer has amended the date of need no less than ten (10) working days prior to the date of need through notice to the order holding office, the employer will guarantee one week's wages to all workers, subject to this order beginning with the anticipated start date. The wage guarantee is based on the highest of the AEWR, the prevailing hourly wage or piece rate, an agreed-upon collective bargaining wage (this employer is not subject to a collective bargaining agreement), or the Federal or state minimum wage in effect at the time work subject to the provisions of the job order begins, and calculated for a 45 hour workweek, as specified in Item 11.

///
///
///

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 6 of 9.**

All workers referred to he job through a State Workforce Agency shall contact that agency, or preferably the local holding office, to verify the date of need cited in the job order no sooner than nine (9) working days and no later than five (5) working days prior to the original date of need cited in the job order. Failure to contact such office shall disqualify the worker from the assurance provided in 20 CFR section 653.501(d)(ii)(v)(A)(D).

If the worker voluntarily abandons employment before the end of the job order period or is terminated for job related reasons or misconduct, the employer will notify DOL (and DHS, in the case of an H-2A worker ) not later than two (2) working days after such abandonment occurs; five (5) consecutive workdays of unexcused absence shall constitute abandonment of employment. The employer will not be responsible for providing or paying return transportation and subsistence expenses of the worker and, the worker is not entitled to the three-quarters (¾) guarantee described above.

The employer will advise H-2A visa beneficiaries of their responsibility to return to their country of origin, or to subsequent employment-authorized work, at the end of the term of employment.

The employer will cooperate with outreach activities conducted pursuant to 20 CFR 653.107, outreach workers shall have reasonable access to worker in the conduct of outreach activities.

The employer agrees to maintain adequate and accurate payroll records, in accordance with the requirements of 20 CFR section 655.122(j)(1), and to retain such records for a period of not less than three (3) years after the date of certification. The employer will furnish to each worker on pay day an itemized accounting of earnings and of all legally-required and worker authorized deductions. Deductions for FICA and federal/state tax withholding, and deductions including court-ordered child support, garnishment and liens, and any other such legally-required deductions will be made in individual circumstances as required by law. All deductions will be made in accordance with FLSA regulations. Advance and/or loans made to workers, if any, may be repaid by per-authorized payroll deductions. The employer does not envision other uniform workforce-wide payroll deductions. Reasonable repair costs of damage to housing other than that caused by normal wear and tear will be charged to workers found to have been responsible for such damage to housing. If a worker makes a long distance telephone call using the employer's telephone line, the worker will be deemed to have consented to the deduction of the cost of such call(s) from his or her paycheck and will be promptly confirm such authorization in writing. If the worker does not authorize such a deduction in writing, the worker will be expected to repay the employer for such telephone use upon demand. If the worker does not pay the cost of such call(s) within a reasonable time after being asked to do so, the worker will be subject to discipline in accordance with the employer's policies.

No employer shall make any deduction for wage or require any reimbursement form an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 7 of 9.**

Employer's prohibits the payment of recruitment fees by workers. If a worker is asked to pay such a fee or has actually paid such a fee, he or she shall inform the employer immediately so that the employer may take appropriate action.

Each worker will be paid individually by check on Saturday. The payroll period is weekly. The employer will furnish to the worker, on or before each payday, one or more written statements showing the worker's total earning for the pay periods, the beginning and ending dates of the pay period, the worker's hourly rate and/or piece rate of pay, the units produced daily (if paid by piece rate), the hours of employment which were offered to the worker (broken out by the hours offered in accordance with and over and above three-quarter (¾) guarantee), the hours actually worked by the worker, and itemization of all deduction that the employer had made from the worker's wage, and the employer's name, address and FEIN.

The employer agrees to make earning records and statements available for inspection and transcription upon request by the Secretary of Labor or a duly authorized and designated representative, and by the worker and representatives designated by the worker when appropriate authorization is provided.

Employer will provide worker's compensation at no cost to workers covering injury and disease arising out of and in the course of worker's employment. Proof of worker's compensation insurance will be provided to the certifying officer prior to the certification date.

**Item 19. Transportation Arrangements (continued from ETA 790, page 4, item 19.**

If the worker completes the period of employment, the employer will provide or pay for the worker's transportation and reasonable subsistence from the place of employment from which the worker came to work for the employer, except when the worker has accepted subsequent employment with another employer who agrees to accept the return transportation costs, in which case this employer only pays for the transportation to the next job.

Reimbursement of inbound and return transportation costs applies only to persons recruited from outside normal commuting distance (to and from their permanent place of residence each day; see page one). Return transportation will not be provided to workers who voluntarily abandon employment before the end of employment period or who are terminated for cause.

The employer will provide transportation at no cost to the worker from the employer providing housing to the work-site and return to such housing on a daily basis. Such transportation shall be in accordance with applicable local, state, Federal laws and regulations. The use of this transportation is voluntary; no worker will be required as a condition of employment to utilize the transportation and subsistence if applicable. NO daily transportation is provide by employer to local workers other than form farm to work-site.

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 8 of 9.**

The employer has three vehicles with valid registration and insurance that will be used as vehicles of transportation for H2A workers. The employer owns a 1999 Ford Econoline E350 Super Duty, a 1998 Ford Club Wagon E350 HD, and a 2000 Ford Econoline E350 Super Duty. The vehicles will be used to transport H-2A workers from the housing location to their place of work, and back to their housing location when the work day has been completed. ~~The Ford Econoline will make multiple trips to transport the remaining workers~~. All vehicles are insured and are in compliance with 20 C.F.R. 655.122(h). Please see attachment – Response to NOD – RC 01/16/18

*** This is not a Farm Labor Vehicle. The employer will make multiple trips to transport workers. ***

***The employer agrees to maintain the insurance coverage of all vehicles throughout the work contract.***

**Worker's Compensation Insurance**

****The employer agrees to maintain Worker's Compensation coverage through the entire work contract.****

Carrier: The Zenith Worker's Compensation Specialists
Policy #: Z127610302

**Directions from Housing to Worksite**

| | |
|---|---|
| 946 W. McElhany Ave<br>Santa Maria, CA 93458<br>(10 Employees) | 937 North DeJoy Street<br>Santa Maria, CA 93458<br>(15 Employees) |
| 1021 W. Alvin<br>Santa Maria, CA 93458<br>(15 Employees) | 918 Nita Ct.<br>Santa Maria, CA 93458<br>(10 Employees) |

**See Attached Maps**

The employer will offer housing, bedding (mattress, blankets, sheets, pillows, and pillow cases), storage for personal belongings and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence daily.

**ETA 790-Attachment 1 (continued from ETA 790 page 7, item 15. Referral Instructions)**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 9 of 9.**

Employer-provided housing will be clean and in compliance with applicable housing standards when made available for occupancy, and will be maintained in compliance with applicable standards during the period of occupancy.

Workers occupying employer provided housing will be responsible for maintaining their living areas in a neat, clean manner. Specifically, workers must maintain housing in the same conditions as provided by the employer at the time of initial occupancy (i.e., beds may not be moved closer together, mattresses may not be moved onto the floor.)

In case of emergency only, workers occupying employer provided housing may be contacted by calling the employer phone number.

The Company assumes no responsibility whatsoever for housing arranged by workers on their own. The employer will not provide a housing allowance or assistance to workers eligible for employer provided housing who elect to provide their won ousting with the exception of voluntary transportation provided at the discretion of the employer at no cost to the worker.

Housing is offered to workers only. No tenancy in employer-provided housing is created by the offer of employer provided housing. The employer retains possession and control of the housing premises at all times. Workers housed under the terms of this Clearance Order shall vacate the housing promptly upon termination of employment.

**Directions to Worksite from 101**
1) Airport Ranch 3,
The Santa Maria Public Airport
Santa Maria, CA 93454

2) Airport Ranch 4,
The Santa Maria Public Airport
Santa Maria, CA 93454

**See Attached Maps**

///
///
///

**SPANISH**

*We have translated these terms of employment into Spanish and done our best to be accurate in every respect. However, if there is a conflict between the Spanish translation and the English original, the English original controls.*

*Hemos traducido las condiciones de empleo al español, y hemos hecho nuestro mejor esfuerzo para ser exactos en todos los aspectos. Sin embargo, en caso de un conflicto entre la traducción al español y el original en inglés, el contrato en inglés prevalecerá.*

**Item 3.a. Description of Housing/ Descripción de la Vivienda (continuación del ETA 790, página, Articulo 1)**

La vivienda es provista bajo ningún costo a empleados que no conmutan. Se conoce como "empleados no-conmutables" a los empleados quiénes no tienen la posibilidad de viajar cada día desde y hacia el lugar de su residencia que él /ella ocupaba en el momento del ofrecimiento de trabajo. La vivienda será provista solamente a empleados. Ninguna persona que no sea un empleado y que no se le haya asignado una habitación se le permitirá ocupar la vivienda.

El empleador se retiene la posesión y control del área de la vivienda en todo momento y el empleado, si se le provee vivienda bajo los términos de este contrato de trabajo, desocupara la vivienda de inmediato bajo terminación del empleo con el empleador que provee la vivienda, de acuerdo con la la ley estatal.

La vivienda deberá estar limpia y de conformidad con los estándares aplicables para la vivienda federal o los estándares de vivienda de rentas locales cuando se encuentren disponibles para su ocupación. Si no se ha realizado una al momento del llenado, New Hope Harvesting, LLC. solicitara una inspección a tiempo de la vivienda provista por el empleado a los representantes de la Agencia de Personal Estatal, el Departamento de salud del Estado y/o la Administración de Empleo y Entrenamiento de los EEUU para verificar las condiciones de dicha vivienda para asegurar que todas las vivienda ofrecidas cumplan con los estándares a mas tardar de 30 días previos a su ocupación.

Los empleados que ocupan la vivienda serán responsables de mantener la vivienda y los alrededores en orden y limpios.

Los empleados serán asignados a la vivienda del empleador por parte de un administrador designado por la compañía y deberán ocupar la vivienda asignada a ellos. La empleadas femeninas serán provistas de instalaciones para dormir y baños/sanitarios compartidas solamente con otras empleadas femeninas. El comedor, cocina completa/instalaciones de cocina y otras áreas comunes serán compartidas por todos los empleados.

/ / /

New Hope Harvesting hará esfuerzos para transferir al trabajador a otro empleo comparable aceptable para el trabajador, de conformidad con la ley de inmigración vigente, según corresponda. Si tal transferencia no se ve afectada, New Hope Harvesting: 1) Devolverá al trabajador, a nuestro cargo, al lugar desde el cual el trabajador vino o transportará al trabajador a otro empleador H2A certificado, lo que prefiera el trabajador; 2) Reembolsar al trabajador el monto total de las deducciones hechas por el empleador del pago del trabajador para el transporte y los gastos de subsistencia a los lugares de empleo; y 3) Pagar al trabajador por los costos incurridos por el trabajo para el transporte y la subsistencia diaria en el lugar de trabajo del empleador de conformidad con 20 C.F.R. sección 644.122 (o)).

**Item 11. Anticipated Hours of Work per Week/Hora Anticipadas de Trabajo por Semana (continuación del ETA 790, pagina 1, Articulo 11.)**

El día de trabajo es de 7:00 AM hasta las 3:00 PM de lunes a viernes y de 7:00 a.m. hasta las 3:00 PM. el Sábado, con un tiempo para comer, sin goce de sueldo (7.5 horas/día y 7.5 horas/día Sábado). Se le podrá pedir al trabajador, pero no sera requerido, trabajar tanto como 12 horas por día y/en el día de descanso religioso, dependiendo en las condiciones climáticas u otras condiciones. El calor excesivo, frío o sequía pueden afectar las horas de trabajo. El empleador ofrece 37.5 horas/semanal siempre y cuando las condiciones del tiempo y la condiciones de la cosecha lo permitan. Los empleados se reportaran a trabajar el día y al lugar designado como sella indicado por el empleador cada día.

**Item 15. Referral Instructions/Instrucciones para el Referimiento de Candidatos (continuación del ETA 790, pagina 3 Articulo 15)**

New Hope Harvesting, LLC cumplirá con los requisitos y las garantías del 20 CFR sección 653.501 en el proceso y/o contratación de individuos referidos a través del sistema de acreditación. La referencias de estos individuos serán hechas a través de la oficinas de colocación California Employment Development Department para comprobar el empleo actual, cosecha o información de vivienda y para asegurar que se hagan los arreglos correspondientes. Sera responsabilidad de la oficina SWA referente de informar a los solicitantes de empleo de los términos y condiciones de la orden de autorización. La oficina SWA referente después de coordinar la referencias con la oficinas de colocación contactara al agente del empleador o al empleador directamente y asesorara al agente o empleador sobre la referencia o referencias. Cuando sea posible, las oficinas SWA podrán proveer el servicio de traductor si fuera necesario. La entrevistas, ya sea en persona o por teléfono, serán dirigidas por el agente del empleador durante las hora de 9:00 AM a 3:30 PM de lunes a viernes. **El empleador sera contactado primeramente en la siguiente dirección o teléfono.**

**ETA 790 Attachment 1**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 9 of 16.**

**Empleador**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**946 W. McElhany Ave**
**Santa Maria, CA 93458**
**805-478-4469**

Los solicitantes serán entrevistados por teléfono en el momento de ser recomendados o tan pronto sea posible. Si una oficina de colocación planea referir a varios solicitantes al mismo tiempo se requiere que el empleador sea avisado por adelantado y una agenda para la entrevista. Las oficinas SWA externas del área local pueden utilizar el sistema de llamado por cobrar proveído en el Ítem 11.

La decisión de contratación sera comunicada directamente al solicitante al teléfono, dirección, correo electrónico u otro medio de información en el caso que dicha información no pueda ser otorgada durante la entrevista. Se le debe pedir al solicitante de estar en contacto con la oficina de referencia SWA en cualquier caso.

New Hope Harvesting, LLC. cumplirá con todas las garantías establecidas de acuerdo a 20 CFR sección 655.135 que incluye pero no se limita a la normativa especifica con referencia a las practicas de contratación, etapa positiva de contratación, en cumplimiento con las leyes federales, estatales y locales y las obligaciones especificas establecidas en la subparte (a) al (l) para todos los trabajadores que aplican y/o son contratados para desarrollar el trabajo específicamente descrito en la orden de autorización.

**Item 16 Description and Requirements/Descripción del Trabajo (continuación del ETA 790, pagina 3 Articulo 16)**

Realiza una variedad de tareas manuales asociadas con el cultivo y cosecha de la producción de fresa, que incluyen pero no se limitan a plantar, cultivar cultivos para la producción, realizar tareas de cultivo manual, llevar un conteo de cultivos cosechados y cargados, asegurar la precisión de todos los conteos y otros registros mantener, cosechar de la planta o usar un cuchillo para remover los cultivos de la planta de acuerdo al tamaño, color, forma y grado de madurez, separar los cultivos de acuerdo con el tamaño y la uniformidad y colocar en el recipiente, cerrar el envase después de empacar y apilar los recipientes llenos de acuerdo al tamaño y cosechar cultivo.

El trabajador no puede ser daltónico debido a la necesidad de distinguir los colores de los cultivos de la madurez y madurez adecuada, debe saber usar cizallas, cortaúñas y otras herramientas agrícolas, no fumar, drogas ilegales, alcohol o armas de ningún tipo en la vivienda o el campo.

/ / /

Dimensiones y peso de los contenedores

Fresas: Las dimensiones son 20 "X 12" X 3 ". El contenedor vacio pesa alrededor de .5 libras. El contenedor lleno pesa aproximadamente 8 libras.

Los trabajadores deben asistir en cargar y des encargar las cosechas y materiales hasta e incluyendo 60 libras. El empleado debe de poder levantar este peso a alturas de cinco (5) pies durante el curso del día laboral. Los trabajadores deben ser capaces de trabajar en sus pies y doblados por un periodo prolongado de tiempo.

Alergia a la ambrosía, ocre y aerosol para insectos relacionados con productos químicos, etc. pueden afectar a capacidad de los trabajadores para realizar el trabajo. Los trabajadores pueden estar expuestos a un clima húmedo temprano en la mañana y el calor a través del día, mientras que trabajan en los campos. Las temperaturas pueden oscilar entre 10 a 100 F. Los trabajadores pueden ser obligados a trabajar durante lluvias ocasionales no lo suficientemente fuerte como para detener las operaciones sobre el terreno. Los trabajadores deben ser físicamente capaz de hacer el trabajo necesario con o sin

adaptaciones razonables. Trabajo de los Sábados. Pruebas de detección de drogas serán requeridos pero serán pagadas por el empleador. Además, los trabajadores pueden ser requeridos a realizar tareas tales como los siguientes; riego, acequias, paleando, azadón, transporte, preparación del terreno, y otras tareas relacionadas con la agricultura.

El empleador asegura que los trabajadores se les provee transportación de viviendas ha sitio de trabajo todos los días (para los trabajadores que requieren vivienda por regulaciones )

**Derecho de Despedir:**
Las personas que buscan empleo deben estar disponibles para todo el período solicitado por el empleador. Los candidatos seleccionados serán sometidos a un período de prueba de hasta cinco (5) días, durante los cuales el desempeño de tareas requeridas serán evaluados. Si el rendimiento durante el período de prueba no es aceptable para el empleador, el ofrecimiento a ese trabajador será cancelado.

Empleador retiene el derecho de cancelar el ofrecimiento a el trabajador que obviamente no que no califica, un trabajado que puede físicamente en condiciones, pero no demuestran la voluntariedad para realizar el trabajo necesario para los empleadores a crecer producto de primera calidad, Y / o no cumple con los estándares de producción.

Todos los términos y condiciones incluidos en la orden de trabajo se aplicará igualmente a todos los trabajadores, tanto los trabajadores de los Estados Unidos como los trabajadores H-2A empleados que se les ofrece trabajo en la ocupación descrita en este orden de trabajo.

Debido a que la tasa promedio de selección de un trabajo varía según la estación según el clima, la cantidad, el tamaño y la variedad de la fruta, y otros destinos no hay un número mínimo de jefes que se requiera para ser recogidos durante la temporada. (es decir, 5-6 cartones por hora es apropiado al comienzo de una temporada cuando la cantidad de fruta es liviana, pero esta cantidad puede cambiar cuando la cantidad de fruta aumenta en la cosecha máxima. 12-14 cartones son el envío máximo de producción que será requerido). Por lo tanto, se espera que los trabajadores escojan un número mínimo de cajas por hora, que se determina comparando la productividad por hora de los trabajadores con otros trabajadores asignados al mismo producto, variedad de cultivo, sitio de campo y ubicación dentro de un sitio de campo y en el tiempo en que se realiza el trabajo El empleador revisará la productividad de los trabajadores al final de un período determinado y no a diario. Si los trabajadores no cumplen con el estándar mínimo promedio como se define aquí, se les puede ofrecer a los trabajadores un trabajo alternativo, si está disponible, o, después del aviso, los trabajadores pueden ser despedidos por causa.

El empleador se reserva el derecho de despedir a un trabajador obviamente no calificado, simulador o trabajador recalcitrante que pueda físicamente pero no demuestre la voluntad de realizar el trabajo necesario para que el empleador cultive un producto de calidad superior.

Todos los términos y condiciones incluidos en la orden de trabajo se aplicarán por igual a todos los trabajadores, tanto de los EE. UU. Como a los de H-2A, empleados en la ocupación descrita en esta orden de despacho.

**Item 18 More Detail About Pay/Artículo 18 Más Detalles Sobre El Pago (continuación del ETA 790, pagina 4 Artículo 18)**

En el caso de que el USDOL ha disminuido el AEWR por cualquier motivo durante la pendencia de la etapa positiva de contratación y el plazo de certificación laboral en la presente solicitud, el empleador puede reducir su oferta de pago de salario por hora, siempre y cuando el nuevo AEWR sigue siendo la más alta de las mencionadas tarifas en efecto en el momento que se realiza el trabajo. En el caso de que la SWA promulga un salario por hora de trabajo superior a la tasa federal AEWR que posteriormente es sustituido por un salario determinado por la industria o empleador encuesta compensatorias, aceptado y aprobado por la USDOL, el empleador reserva el derecho de pagar la tasa más baja en su apreciación, sino en todo caso no inferior a la mayor de las mencionadas tarifas en efecto en el momento que se lleva a cabo el trabajo.

El empleador pagará el pago de horas extras para los trabajadores que trabajan más de 10 horas por día y durante las primeras 8 horas del séptimo día de trabajo y el doble del pago regular después de 8 horas de trabajo en el séptimo día de trabajo

Piece rate: $1.60 per box for Fresh Market, and $2.65 per box for Juicing and Processing.
* Estimated hourly at $1.60 per boss is $12.80; Estimated hourly $2.65 per box is $13.25.
///

El empleador ofrece garantías del empleo de los trabajadores de al menos 3/4 de las horas de trabajo de la totalidad del período durante el cual la orden de trabajo y todas las extensiones, son en efecto, a partir del primer día de trabajo después de la llegada de los trabajadores en el lugar de empleo y termina en la fecha de terminación especificado en la orden de trabajo o su prórroga, si la hubiere. Si el empleador ofrece al trabajador durante el período menos empleo de lo requerido en virtud de la

presente disposición, el trabajador tendrá que ser pagado la cantidad que él/ella podría haber ganado si hubiera él/ella, en realidad trabajado el número de horas garantizadas. Cualquier empleado que sella cancelado por buena razón no tendrá derecho a esta garantía.

Si, antes de la fecha de vencimiento indicada en este orden de evacuación los servicios del trabajador ya no son necesarios por razones que escapan al control del empleador como consecuencia de un incendio, o de otro Acto de Dios, el empleador puede poner fin a su contrato de trabajo. Si tal hecho constituye un contrato imposible eso será determinado por el "Certifying Officer" en conformidad con la ley. En el caso de la rescisión de un contrato, el empleador deberá cumplir los 3/4 garantía por el tiempo que ha transcurrido desde el primer día de trabajo a la hora de su terminación como se describe en 20 CFR sección 655.122(I). El empleador deberá hacer todo lo posible por transferir el trabajador empleo comparable a otros aceptable para el trabajador, de conformidad con las leyes de inmigración, según el caso. Si dicha transferencia no se realiza, el empleador deberá:

1. Regresar al trabajador (a cargo del empleador) al lugar de donde vino (dejando a lado empleo intermediar) ha trabajar con el empleador, o transportar al trabajador a la próxima localidad de trabajo que esta "certificado H-2A," cualquiera que el trabajador prefiere.

2. Reembolsar al trabajador el importe total de las deducciones realizadas por el trabajador por parte del empleador para el transporte y los gastos de estancia en el lugar de empleo; y

3. Pagar al trabajador los gastos en los que incurra el trabajador para el transporte y el pago de las dietas a que el empleador del lugar de empleo, si no se ha pagado al trabajador antes de la separación del empleo. El pago de las dietas debe ser calculada según se establece en 20 CFR sección 655,122 (h). El gasto del transporte será igual al gasto del transporte de el más económico y razonable portador común a según la distancia recorrida.

Empleador proporcionará gratuitamente herramientas, suministros y equipos necesarios para las funciones asignadas.

Según 20 CFR sección 653,501 (d) (ii) (v),(D), a menos que el empleador modifique la fecha de comienzo del trabajo, no menos de diez (10) días hábiles antes de la fecha en que empieza el trabajo con un aviso a la oficina que tiene la orden de trabajo, el empleador garantiza una semana de salario a todos los trabajadores, subordinado a los términos en el la presenta orden, empezando por la fecha prevista de inicio.

La garantía salarial se basa en el nivel más alto de los salarios AEWR, prevaleció el salario por hora de trabajo o salario a destajo, y está de acuerdo con la negociación colectiva de los salarios (este empleador no está sujeto a un contrato colectivo de trabajo), o el salario mínimo federal o estatal vigente en el momento trabajo sujeto a las disposiciones de la orden de trabajo comienza, y calculado para una semana 45 horas, tal como se especifica en el punto 11.

Todos los trabajadores a que se refiere el trabajo a través de SWA se pondrá en contacto con el SWA, o de preferencia la oficina que retiene la orden de trabajo, con el fin de verificar la fecha en que se necesita en el orden de los trabajos no antes de (9) días hábiles, a más tardar cinco (5) días hábiles antes de la fecha original de necesidad citado en la orden de trabajo. Si no logra ponerse en contacto con dicha oficina el trabajador no sera otorgado la garantía proporcionada en 20 CFR sección 653,501 (d) (ii) (v) (A) (D).

En una situación donde el trabajador abandone voluntariamente el empleo antes del final de la orden de trabajo o es despedido por razones relacionadas con el trabajo y la mala conducta, el empleador deberá notificar a DOL (y DHS, en el caso de una persona con visa H-2A) no más tarde de dos (2) días hábiles después de abandono se produce; cinco (5) días hábiles consecutivos de ausencia sin aviso constituirá abandono de empleo. El empleador no se hará responsable de proporcionar o pagar transporte de ida y vuelta y los gastos de estancia de los trabajadores y, el trabajador no tiene derecho a recibir la garantía de 3/4 descrita anteriormente.

El empleador deberá informar ha el beneficiario de un a visa H-2A de la responsabilidad de devolver a su país de origen, o a su empleo de trabajo autorizado, al final del mandato del empleo.

El empleador deberá cooperar con las actividades de extensión realizadas en virtud de 20 CFR 653.107.

El empleador acuerda mantener adecuada y precios archivos, de conformidad con los requisitos de 20 CFR sección 655,122 (j)(l) y de mantener dichos archivos durante un período no inferior a tres (3) años después de la fecha de la certificación.

El empleador deberá proporcionar a cada uno de los trabajadores de día de pago una contabilidad detallada de los ingresos y de los requisitos establecidos por la ley y el las deducciones autorizadas por el trabajador. Las deducciones de FICA y federal/estatal y retención de impuestos, deducciones y manutención a menores ordenado por la corte, y otros de las deducciones se harán echas bajo las circunstancias individuales como requerido por ley. Todas las deducciones se harán de conformidad con regulaciones FLSA. El empleador no contempla otras deducciones uniformas que aplican a todo los trabajadores. Costos razonable de reparación de daños en las viviendas que no sea causado por desgaste normal de uso será cargada a los trabajadores que han sido responsables de los daños causados a la vivienda. Si un trabajador hace una llamada telefónica de larga distancia llamada, utilizando la línea telefónica del empleador, el trabajador se considerará que ha dado su consentimiento a la

deducción de los gastos de llamadas de este tipo(s) de su salario, y se confirme prontamente la autorización por escrito.

Si el trabajador no autorizar la deducción por escrito, el trabajador deberá reembolsar al empleador el pago de uso de teléfono, en función de la demanda. Si el trabajador no paga el costo de llamadas de este tipo(s) dentro de un tiempo razonable después que se les pidió que lo hicieran, el trabajador estará sujeto a la disciplina.

Ningún empleador deberá hacer ninguna deducción por salario o requerir ningún tipo de reembolso a un empleado por falta de efectivo, rotura o pérdida de equipo, a menos que se pueda demostrar que la falta, rotura o pérdida es causada por un acto deshonesto o intencional, o por la negligencia grave del empleado

El empleador prohíbe el pago de gastos de contratación de los trabajadores. Si a un trabajador se le pide que page gastos de contratación, o ya paga, él o ella deberá informar al empleador inmediatamente para que el empleador o pueda adoptar medidas adecuadas.

A cada uno de los trabajadores se les pagará por separado cada Sábado de la semana. El periodo de nómina es semanal. El empleador deberá proveer le al trabajador, en o antes de cada pago, una o más declaraciones por escrito que muestra el trabajo total de ingresos para los períodos de pago, Las fechas de inicio y de fiscalización del período de pago, la tarifa por hora y/o por pieza que se le paga al trabajador, las unidades producidas diariamente (si el pago de tarifas de precios), Las horas de trabajo

que se ofrecen a los trabajadores (desglosado por horas ofrecidas de conformidad con y por encima de 3/4) ,las horas efectivamente trabajadas por el trabajador, y el detalle de todos las deducciones que el empleador había hecho del salario del trabajador, y el nombre del empleador, la dirección y FEIN.

El empleador esta de acuerdo que ara disponibles los registros y declaraciones de ingresos para inspección y transcripción a petición de la Secretaria de Trabajo o un debidamente autorizado representante, y por parte del trabajador y el representante designado por el trabajador cuando autorización apropiada existe.

El Empleador proveerá seguro de compensación al trabajador, sin costo al trabajador que cubrirá lesiones y enfermedades derivadas de y en el curso de la relación laboral. Prueba de seguro de compensación del trabajador será proporcionada a los funcionarios encargados de la certificación antes de la fecha de certificación.

**Item 9. Arreglos de Transporte (continuación de ETA 790, página 4, item19.)**

Si el trabajador finaliza el período de empleo, el empleador deberá pagar a los trabajadores el transporte y subsistencia razonables desde el lugar de trabajo, a través del cual el trabajador entró a

trabajar para el empleador, excepto cuando el trabajador ha aceptado un puesto de trabajo con otro empleador que acuerda aceptar los gastos de la transportación para que el trabajador regrese a su país de origen, en cuyo caso el empleador sólo paga por el transporte al siguiente trabajo.

Reembolso de gastos de la transportación de entrada y retorno se aplica sólo a las personas contratadas fuera de la jornada normal de distancia (de su lugar de residencia permanente cada día como es dicho en la página 1).Transporte de ida y vuelta no ser proporcionados a los trabajadores que renuncien voluntariamente a empleo antes del final del período de empleo o que se rescinda por causa.

El empleador le proporcionará el transporte sin costo alguno para el trabajador del empleador proporcionar alojamiento para el sitio de trabajo y volver a la vivienda sobre una base diaria. Ese tipo de transporte se realizará de acuerdo con las normas locales, estatales y federales las leyes y los

reglamentos. El uso de este transporte es voluntaria; ningún trabajador se requiere como condición de empleo a utilizar el transporte y las dietas si procede. No habra transporte diario para los trabajadores afuera del transporte para el sitio de trabajo y volver a la vivienda.

**Transporte Diario al Sitio de Trabajo**

El empleador tiene tres vehículos con matrícula y seguro válidos que se utilizarán como vehículos de transporte para los trabajadores H-2A. El empleador posee un 1999 Ford Econoline E350 Super Duty, y un 1998 Ford Club Wagon E350 HD y un 2000 Ford Econoline E350 Super Duty. Los vehículos se usarán para transportar a los trabajadores H-2A desde la ubicación de la vivienda a su lugar de trabajo, y de regreso a la ubicación de su vivienda cuando el trabajo se haya completado. Los Ford Econoline realizará múltiples viajes para transportar a los trabajadores restantes. Todos los vehículos están asegurados y cumplen con 20 C.F.R. 655.122 (h).

***El empleador no usa "Vehículos de trabajo agrícola."******

***El empleador acepta mantener la cobertura de seguro de todos los vehículos durante todo el contrato de trabajo.***

**Seguro de Compensación Laboral**

****El empleador acepta mantener la cobertura a través de todo el contrato de trabajo.****

The Zenith Worker's Compensation Specialists
Numero de póliza: Z127610302

///
///

**ETA 790 Attachment 1**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 15 of 16.**

**Direcciones de Vivienda al Lugar de Trabajo y Information Sobre Alojamiento**

946 W. McElhany Ave
Santa Maria, CA 93458
(10 Employees)

937 North DeJoy Street
Santa Maria, CA 93458
(15 Employees)

1021 W. Alvin
Santa Maria, CA 93458
(15 Employees)

918 Nita Ct.
Santa Maria, CA 93458
(10 Employees)

**See Attached Maps**

El empleador ofrecerá alojamiento, ropa de cama (colchones, frazadas, sábanas, almohadas y fundas de almohadas), almacenamiento de objetos personales y servicios públicos sin costo alguno para los trabajadores reclutados desde distancias superiores a las normales que no pueden regresar a su lugar de residencia todos los días.

New Hope Harvesting, LLC., Proporcionará literas para todas las casas alquiladas; las camas por habitación se basan en 50 pies cuadrados por persona por habitación, por código (el baño y la cocina no están incluidos en el cálculo de pies cuadrados. Todas las habitaciones cuentan con botiquines de primeros auxilios y la habitación con cocinas cuenta con extintores de incendios.

Las viviendas provistas por el empleador estarán limpias y cumplirán con las normas de vivienda aplicables cuando estén disponibles para ocuparlas, y se mantendrán de acuerdo con las normas aplicables durante el período de ocupación.

Los trabajadores que ocupen viviendas proporcionadas por el empleador serán responsables de mantener sus áreas de vivienda de una manera ordenada y limpia. Específicamente, los trabajadores deben mantener la vivienda en las mismas condiciones que las provistas por el empleador en el momento de la ocupación inicial (es decir, las camas no se pueden mover juntas, los colchones no se pueden mover al piso).

En caso de emergencia solamente, los trabajadores que ocupan viviendas proporcionadas por el empleador pueden ser contactados llamando al número de teléfono del empleador.

///
///
///

**ETA 790 Attachment 1**
**Guadalupe Gaspar "New Hope Harvesting, LLC."**
**Page 16 of 16.**

La Compañía no asume responsabilidad alguna por la vivienda organizada por los trabajadores por su cuenta. El empleador no proporcionará un subsidio de vivienda o asistencia a los trabajadores elegibles para la vivienda provista por el empleador que decida proporcionar su expulsión vencida con la excepción del transporte voluntario proporcionado a discreción del empleador sin costo alguno para el trabajador.

La vivienda se ofrece solo a los trabajadores. Ningún arrendamiento en la vivienda proporcionada por el empleador se crea mediante la oferta de vivienda proporcionada por el empleador. El empleador retiene la posesión y el control de la vivienda en todo momento. Los trabajadores alojados bajo los términos de esta "Clearance Order" deberán desalojar la vivienda inmediatamente después de la terminación del empleo.

**Direcciones ha el Lugar de Trabajo de U.S. 101**

1) Airport Ranch 3,
The Santa Maria Public Airport
Santa Maria, CA 93454

2) Airport Ranch 4,
The Santa Maria Public Airport
Santa Maria, CA 93454

**See Attached Maps**

/ / /
/ / /
/ / /