**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MIGUEL GUTIERREZ,

          Plaintiff,

    v.

NEW HOPE HARVESTING, LLC.;
GUADALUPE GASPAR; EUGENIA
GASPAR MARTINEZ; ARACELI
GASPAR GASPAR MARTINEZ; AND
JDB PRO, INC., d/b/a CENTRAL
WEST PRODUCE, Inclusive,

          Defendants.

Case No. 2:19-cv-07077-FWS-AJR

**ORDER GRANTING MOTION FOR
PRELIMINARY APPROVAL OF
CLASS/COLLECTIVE ACTION AND
PAGA SETTLEMENT [214]**

Before the court is Plaintiff Miguel Gutierrez's ("Plaintiff") Motion for Approval of Class/Collective Action and PAGA Settlement.  (Dkt. 214 ("Motion" or "Mot.").)  The court held oral argument on the matter on April 11, 2024.[1]  (Dkt. 215.)  Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED**.

**I.   Background**

In this case, Plaintiff brings several claims under federal and state laws against Defendants New Hope Harvesting LLC, Guadalupe Gaspar, Eugenia Gaspar Martinez, and Araceli Gaspar Martinez (collectively, "Defendants") based on Defendants alleged failures to properly to pay overtime wages and minimum wages, failures to provide proper rest and meal periods, and improper charges or failures to reimburse expenses experienced.  (Dkt. 25 ¶¶ 1-5, 9-11, 19-26, 34-92.)  Plaintiff seeks to represent a collective under the Fair Labor Standards Act ("FLSA"), a class of plaintiffs asserting various causes of action under federal and state laws pursuant to Federal Rule of Civil Procedure 23, and aggrieved employees under California's Private Attorney General Act ("PAGA").  (*Id.* ¶¶ 118-244.)

The Motion concerns Plaintiff's request to settle the claims alleged in the operative First Amended Complaint against Defendants.  Plaintiff requests preliminary class certification of approximately 900 individuals that worked for Defendants as agricultural workers from February 4, 2016, through the date of preliminary approval. (Mot. at 2.)  Plaintiff also requests that the court preliminary approve the proposed settlement agreement and procedures for notice, and set the matter for a final fairness hearing.  (*Id.* at 2-3.)  Plaintiff further requests appointment

---

[1] The court continued the Motion after the April 11, 2024, hearing to April 25, 2024, pending receipt of additional supporting materials from Plaintiff.  (Dkt. 215.)  Having received those materials, the court took the matter off calendar.  (Dkt. 218.)

1  as class representative, appointment of his attorneys as class counsel, and appointing

2  Atticus Administration LLC as settlement administrator.  (*Id.*)

3  **II.    Legal Standard**

4  　　Rule 23(e) provides that the claim "of a class proposed to be certified for

5  purposes of settlement" may be settled "only with the court's approval."  Fed. R. Civ.

6  P. 23(e).  Court approval is also required for settlement of an FLSA collective action

7  and for a PAGA claim.  *See Quiruz v. Specialty Commodities, Inc.*, 2020 WL

8  6562334, at *2-3 (N.D. Cal. Nov. 9, 2020); Cal. Labor Code § 2699(l)(2); *Seminiano*

9  *v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (citing *Nall v. Mal-Motels,*

10  *Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)).  "[T]he factors that courts consider when

11  evaluating a collective action settlement are essentially the same as those that courts

12  consider when evaluating a [class action] settlement under Rule 23(e)."  *Id.* at *2

13  (quoting *De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at *7 (N.D. Cal. Mar. 31,

14  2020)).  Because PAGA does not establish a governing standard for review of PAGA

15  settlements, district courts evaluating PAGA claims employ different approaches.

16  Observing the differences between PAGA claims and a Rule 23 class action,[2] some

17  courts "have found it appropriate to approve a PAGA settlement where 'the settlement

18  terms (1) meet the statutory requirements set forth by PAGA, and (2) are

19  fundamentally fair, reasonable, and adequate in view of PAGA's public policy

20  goals.'"  *See Quiruz*, 2020 WL 6562334, at *3 (quoting *Chamberlain v. Baker*

21  *Hughes*, 2020 WL 4350207, at *4 (E.D. Cal. July 29, 2020)).[3]

22  _____

23  [2] The California Supreme Court has described a PAGA action as a "form of qui tam

24  action."  *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 439 (9th Cir. 2015) (citing *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 382

25  (2014), *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596

26  U.S. 639 (2022)).

27  [3] Others review PAGA settlements by reference to the Ninth Circuit's eight-factor test traditionally used to evaluate class action settlements.  *See, e.g.*, *Wanderer v. Kiewit*

28

"The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, the court may approve a proposed settlement "after a hearing and only on finding that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2).  "[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).  Courts in the Ninth Circuit "examining whether a proposed settlement comports with Rule 23(e)(2) [are] guided by" eight factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citations and internal quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted).[4]  It is the parties' burden to show the court will

---

*Infrastructure W. Co.*, 2020 WL 5107618, at *2-4 (E.D. Cal. Aug. 31, 2020).  For the sake of completeness, the court evaluates the proposed settlement under the separate test that accounts for PAGA's statutory goals.

[4] While Rule 23(e) was amended in 2018, courts continue to apply the Ninth Circuit's eight-factor test.  *See, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 2023 WL 2699972, at *5 (N.D. Cal. Mar. 29, 2023), *aff'd sub nom. Senne v. Concepcion*, 2023

"likely" be able to approve a proposed settlement under Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(1)(B)(ii).

"In addition, although strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (cleaned up).  The court looks for "subtle signs that class counsel have allowed pursuit of their own self-interests to . . . infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  The Ninth Circuit has identified three such signs: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947 (citations and some internal quotation marks omitted).

When the settlement "takes place before formal class certification, settlement approval requires a higher standard of fairness." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation and internal quotation marks omitted).  Moreover, if no class has yet been certified, the parties must also show the "court will likely be able to . . . certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i).  "Rule 23(a) establishes four prerequisites for class action litigation,

WL 4824938 (9th Cir. June 28, 2023); *see also* Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment to subdivision (e)(2) ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  A party seeking certification must also satisfy at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The court engages in a "rigorous analysis" to determine if Rule 23's requirements are met.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *Comcast*, 569 U.S. at 34.

"Courts implementing Rule 23(e) have required a two-step process for the approval of class action settlements: the [c]ourt first determines whether class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121-22 (N.D. Cal. 2016) (citation omitted).  The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (citation and internal quotation marks omitted).  "Some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) (citation omitted).  "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *3) (citation omitted).

III.    **Discussion**

   A.        **Conditional Class Certification**[5]

        1.    Rule 23(a)

        Rule 23(a)'s four prerequisites to bringing a class action are numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a)(1)-(4).  "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  The commonality inquiry turns on "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation" and requires only "a single [common] question."  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350) (emphasis and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted).

        A class may be properly certified only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "In general, courts find

---

[5] Pursuant to the previous court's January 27, 2021, order, 11 individuals who consented to join in this action as FLSA Plaintiffs before the 90-day notice period expired were conditionally certified as the FLSA collective.  (*See* Dkt. 100.)  The settlement concerns the same individuals.  (Dkt. 214-2 ("Palau Decl.") ¶ 27.)  Accordingly, the court does not separately analyze conditional certification of the FLSA collective.

the numerosity requirement satisfied when a class includes at least 40 members," *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010), while "[o]n the low end, the Supreme Court has indicated that a class of 15 'would be too small to meet the numerosity requirement,'" *id*. (quoting *Gen. Tel. Co.*, 446 U.S. at 330)). Plaintiff estimates the settlement class will encompass approximately 900 putative class members. (Palau Decl., Exh. 1 § VIII.) Given the substantial scope of the expected class size in this case, the court finds joinder of all class members would be impracticable and therefore concludes the numerosity requirement is met.

A class action also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). Plaintiff submits that this requirement is met because all class members "were subjected to the same uniform compensation practice resulting in what Plaintiff alleges is a fundamental failure to pay for all hours worked[,]" such that their claims would be proven by "[c]ommon evidence – timekeeping, payroll, sign-in sheets, and [Defendant's] deposition testimony." (Mot. at 12-13.) The court agrees with Plaintiff that the core of this action presents factual questions common to the class regarding Defendant's employment practices and policies, the resolution of which would determine the viability of Plaintiff and the class's claims collectively. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165-66 (9th Cir. 2014) (holding that proof of whether "informal or unofficial policies existed" would drive the resolution of class claims based on alleged violations of working conditions embodied in California's Labor Code). Accordingly, the court finds the commonality requirement is met.

Under Rule 23(a)(3), "the claims or defenses of the representative parties must be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In

1   determining whether typicality is met, the focus should be 'on the defendants' conduct
2   and plaintiff's legal theory,' not the injury caused to the plaintiff." *Lozano v. AT & T*
3   *Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (quoting *Simpson v.*
4   *Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)) (quoting *Rosario v.*
5   *Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  Plaintiff submits common evidence
6   of timekeeping, payroll, sign-in sheets, and Defendants' deposition testimony all
7   constitute common questions of fact amenable for classwide determination.  (Mot. at
8   12-13.)  Plaintiff further emphasizes his legal claims and those of the class all stem
9   from an "allege[d] [] fundamental failure to pay for all worked." (*Id.* at 12.)  The
10  court agrees that the similarities in the class's legal theories of recovery and
11  commonality of sources of evidentiary proof establish common questions of fact and
12  law.  *See Parsons v. Ryan*, 754 F.3d 657, 685-86 (9th Cir. 2014) (finding typicality
13  requirement met notwithstanding potential variance in damages among class plaintiffs
14  where they alleged "the same or a similar injury as the rest of the putative class"; "that
15  this injury is a result of a course of conduct that is not unique to any of them"; and
16  "that the injury follows from the course of conduct at the center of the class claims")
17  (cleaned up).  Accordingly, the court finds the typicality requirement is met.

18       Finally, "the representative parties" in a class action must "fairly and
19  adequately protect the interests of the class" they represent.  Fed. R. Civ. P. 23(a)(4).
20  "To determine whether named plaintiffs will adequately represent a class, courts must
21  resolve two questions: '(1) do the named plaintiffs and their counsel have any
22  conflicts of interest with other class members and (2) will the named plaintiffs and
23  their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis*, 657 F.3d
24  at 985 (quoting *Hanlon*, 150 F.3d at 1020).  The proposed settlement earmarks a
25  $20,000 incentive payment to Plaintiff for serving as representative, (Palau Decl.
26  § III.C.1), but this is not made contingent on Plaintiff's support for the proposed
27  settlement, (*see id.*), and alone is does not disqualify Plaintiff from serving as class
28  representative.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th

Cir. 2015) ("[I]ncentive awards that are intended to compensate class representatives
for work undertaken on behalf of a class "are fairly typical in class action cases" and
"do not, by themselves, create an impermissible conflict between class members and
their representatives") (citations and internal quotation marks omitted).

The court finds no other relevant conflicts of interest in the record.  Plaintiff's
counsel submits Plaintiff has devoted substantial time and effort to prosecuting the
putative class's claims, including "gathering, organizing, and reviewing documents
essential to the case; assisting counsel with investigating the case; responding to
discovery; providing deposition testimony; and participating throughout the litigation
and negotiation."  (Palau Decl. ¶ 49.) Plaintiff's proposed class counsel is both
significantly experienced in repressing workers in employment class actions and has
expended significant resources actively litigating this matter.  (Palau Decl. ¶¶ 9-22;
Dkt. 216-1 ¶¶ 3-4; Dkt. 217 ¶ 38.)  Accordingly, the court concludes Plaintiff and his
proposed class counsel are adequate representatives.  *See Loc. Joint Exec. Bd. of
Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir.
2001) (holding plaintiff was adequate class representative where "the record indicates
clearly that he understands his duties [as class representative] and is currently willing
and able to perform them"); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 (9th
Cir. 2009) (holding the adequacy requirement for class counsel was satisfied where
"[c]lass counsel vigorously prosecuted the case through to a fair settlement with the
participation of two nonconflicted law firms that represented class representatives").
Accordingly, the court finds the adequacy of representation requirement is met.

2.    Rule 23(b)

Plaintiff relies on Rule 23(b)(3), which provides that a class action may be
maintained so long as Rule 23(a)'s prerequisites are satisfied, "questions of law or fact
common to class members predominate over any questions affecting only individual
members," and "a class action is superior to other available methods for fairly and
efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The

predominance inquiry under Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "It 'presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2),' and focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication'; if so, 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76. Rule 23(b)(3) lists four "matters pertinent to these findings," which "include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In this case, the court is satisfied Plaintiff will sufficiently meet the predominance requirement. "Common issues predominate over individual issues when the common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *See Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 1998)). As noted, the crux of this action requires Plaintiff and the class to prove the First Amended Complaint's allegations Defendants' practices and policies resulted in undercompensation on a classwide basis. *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154-55 (9th Cir. 2016) (affirming district court's conclusion that individual issues did not predominate where class plaintiffs alleged that the

defendants' "consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage laws" because "the employer-defendant's actions *necessarily* caused the class members' injury"); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958-59 (9th Cir. 2009) ("[C]ourts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes . . . . Such centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof."). And because the common evidence underlying the class's theories of recovery means their claims are likely to "prevail or fail in unison," *see Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 967 (9th Cir. 2013) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)), the court concludes the predominance requirement is met.

The court also finds the superiority requirement is sufficiently met. Disposition of Plaintiff and the class's claims on a collective basis would promote the efficient resolution of approximately 900 disputes, thus saving litigation costs and time as opposed to litigating the claims individually. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.") (citation omitted). Additionally, the supporting materials accompanying the Motion indicate requiring class members to individually litigate their claims would impose significant costs on the parties, particularly given this case required counsel to take discovery in Mexico. (*See, e.g.*, Palau Decl. ¶¶ 15, 21; Dkt. 216-1 ¶¶ 3, 6.) These high costs, considering the risks proceeding through litigation and relatively small recoveries per class member on an individualized basis, further supports finding the superiority requirement is met. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (affirming district court's finding superiority requirement was satisfied and noting its conclusion "that the 'risks, small recovery, and relatively high costs of litigation' ma[d]e it unlikely

that [the] plaintiff would individually pursue their claims" went to "the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied").

### 3.   Conclusion

The court concludes Plaintiff has shown the court "will likely be able to" certify the class for purposes of judgment on the proposed settlement under Rule 23(a) and Rule 23(b)(3).  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).  Accordingly, the court turns next to whether Plaintiff has also shown the court "will likely be able to" approve the proposed settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(1)(B)(i), (e)(2).

**B.   Adequacy of Settlement**

### 1.   Factors Addressing Potential for Collusion ("*Bluetooth*" Factors)

The court first considers whether the parties' proposed settlement presents "subtle warning signs" it may be a collusive byproduct, namely whether (1) a disproportionate award of settlement funds to class counsel, or an absence of monetary recovery to the class despite adequate compensation to class counsel; (2) a "clear sailing" arrangement waiving a defendant's challenge to a subsequent application for attorney's fees; or (3) a "reversion" or "kicker" provision remitting reductions in attorneys' fees to a defendant instead of the class fund.  *See Bluetooth*, 654 F.3d at 947; *see also Briseño*, 998 F.3d at 1022-25 (holding that "courts must apply *Bluetooth*'s heightened scrutiny" to both pre- and post-class certification settlements following the December 2018 amendments to Rule 23(e)).  "The presence of these three signs is not a death knell," but they "require the district court to examine them, develop the record to support its final approval decision, and thereby assure itself that the fees awarded in the agreement were not unreasonably high." *Kim*, 8 F.4th at 1180 (cleaned up).

Class counsel stands to receive a significant fee, but not one the court finds unreasonably disproportionate.  "Although 25% of the anticipated settlement value is

-13-

a useful benchmark to keep in mind in all cases, [] caselaw affords district courts discretion to refrain from attempting to measure the unmeasurable." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020); *see also In re Easysaver Rewards Litig.*, 906 F.3d 747, 758 (9th Cir. 2018) (noting the Ninth Circuit has "generally held" a fee award within 25% of the total recovery as a "benchmark" for "reasonable" fee award in a class action settlement).  In situations where "the benefit to the class is not easily quantified, district courts have discretion to award fees based on how much time counsel spent and the value of that time (a lodestar calculation) without needing to perform a 'crosscheck' in which they attempt to estimate how this compares to the recovery for the class." *Id.* (citations and some internal quotation marks omitted).

Here, Plaintiff's counsel stands to receive up to 33 1/3% of the $1,000,000 provided for in the proposed settlement fund as attorney's fees, and up to an additional $90,000 in reasonable litigation expenses if approved by the court.  (Palau Decl., Exh. 1 § III.C.3.)  The proposed settlement agreement also provides for injunctive relief beginning ten days from final approval and continuing for three years, which includes requiring Defendants to implement a timekeeping system; requiring Defendants to provide clean water, shade, and washing facilitates to the field workers; and requiring Defendants to host regular trainings for managers when hired, which includes informing the managers of the employee's legal rights regarding ten enumerated topics.  (*Id.* § XII.)  Although the amount Plaintiff's counsel seeks exceeds the 25% "benchmark," the proposed settlement also provides for meaningful injunctive relief. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.  This is particularly true in cases, such as this, where monetary relief is but one form of the relief requested by the plaintiffs.") (citations omitted). Moreover, Plaintiff's supplemental supporting materials show Plaintiff's counsel

incurred significant expenses litigating this action over the past four years, which included extensive discovery and 21 depositions, including depositions taken remotely and in Mexico.  (Palau Decl. ¶¶ 12-15, 18, 20; Dkt. 216-1 ¶¶ 3-4; *see also* Dkt. 217 ¶ 38.)

The proposed settlement lacks a "reversion" (or "kicker") clause, but does include a "clear sailing" arrangement.  As to a "clear sailing agreement," the proposed settlement states that Defendants "will not oppose requests for these payments [of $333,300.00 in attorneys' fees and not more than $90,000 in costs] provided that the requests do not exceed these amounts."  (Palau Decl., Exh. 1 § III.C.3.)  The proposed settlement accordingly provides "for the payment of attorneys' fees separate and apart from class funds" that could be characterized as a "red-carpet treatment on fees."  *See Bluetooth*, 654 F.3d at 947 (citation and internal quotation marks omitted).  However, the proposed settlement does include a clause stating that disbursement of class counsel's fees and expenses "shall not precede disbursement of Individual Class Payments, FLSA Member Collective Payments, and Individual PAGA Payments." (Palau Decl., Exh. 1 § IV.G.)  And, with respect to the "reversion" of class funds, the proposed settlement also provides that unclaimed settlement funds will revert to class members or aggrieved employees, unless the amount is less than $10,000, in which case it will revert to a nonprofit organization or foundation.  (*Id.* § IV.I.)  There is thus no "arrange[ment] for fees not awarded to revert to defendants rather than be added to the class fund."  *See Bluetooth*, 654 F.3d at 947 (citation omitted).

In sum, while the court observes two of the three *Bluetooth* factors are present in the proposed settlement, the court does not find their presence prevents preliminary approval of the proposed settlement in light of the circumstances of this case.  *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (holding "the existence of these three signs does not mean the settlement cannot still be fair, reasonable, or adequate" so long as the district court "examine[s] them" and "develop[s] the record to support its final approval decision").

### 2.  Factors Addressing Adequacy of Settlement

Proceedings in this case began on August 14, 2019, when Defendants removed the action to this District.  (*Id.* ¶ 10.)  The parties mediated the case in October 2020, which did not result in a settlement.  (*Id.* ¶ 19.)  In January 2021, the court conditionally certified the FLSA Collective.  (*Id.* ¶ 16.)  On April 27, 2022, the action was reassigned to this court.  (Dkt. 146.)  Relatively recently, on September 21, 2022, the court granted Defendant JDB Pro, Inc.'s summary judgment motion.[6]  (*See* Dkt. 154.)  On January 5, 2023, the court entered judgment on its summary judgment order after Plaintiff sought to certify it under Rule 54(b).  (Dkt. 166.)  Since the case has remained pending, Plaintiff explored an appeal of the court's summary judgment order later in January 2023, (Dkt. 169), mediated the case in February 2023, (Palau Decl. ¶ 21), and ultimately agreed to a settlement in principle on August 3, 2023, (*id.* ¶ 22).

The case also proceeded through discovery.  Plaintiff's counsel reviewed and analyzed Defendants' payroll, timekeeping, and other records.  (Palau Decl. ¶¶ 12-15.)  In addition to other written and documentary discovery, this case included over 15,000 pages of records produced by Defendants and 71,000 punched time cards.  (*Id.* ¶ 13.)  The parties took 21 depositions, several of which occurred in Mexico.  (*Id.* ¶¶ 14-15.)

Plaintiff's counsel is experienced.  Plaintiff's co-lead counsel has approximately 20 years of practicing in the field of class and representative actions, including representing plaintiffs in wage-and-hour actions.  (Palau Decl. ¶ 4.)  The firm representing Plaintiff has represented plaintiffs in wage and hour class and representative actions, including PAGA and FLSA claims, for approximately thirty

---

[6] The motion for summary judgment was noticed for hearing prior to the reassignment of this case.  (*See* Dkt. 133.)

years.  (*Id.* ¶ 3.)  Plaintiff's counsel believes, based on his experience and review of the case, that the settlement is fair, reasonable and adequate.[7]  (*Id.* ¶ 43.)

The proposed settlement offers $1 million dollars in monetary relief, which represents 5% of the $20,131,864.48 maximum recovery estimated by Plaintiffs' damages model developed for mediation.  (Palau Decl. ¶ 43.)  Class members are expected to receive an average payout of $474, distributed proportionally by number of workweeks within the class period.  (*Id.* ¶ 50.)  The proposed settlement also includes nonmonetary relief in the form of an injunction providing for several changes to Defendants' workplace practices, several of which are listed above.  (Palau Decl., Exh. 1 § VII.)  In exchange, class members are to release all claims relating to the facts pled in the operative First Amended Complaint, with the exception that those Class Members who complete and timely submit Request for Exclusion to the Settlement Administrator.  (*Id.* §§ V.C, VII.F.1.)

Additionally, the 11 individuals comprising the FLSA collective would each receive $1,000 to cover the estimated damages for the alleged FLSA violations, plus liquidated damages.[8]  (*Id.* §§ I.W and IV.E.)  This amount represents the $500 in out-

---

[7] Defendants have not filed an opposition to the Motion, and Defendants' counsel affirmatively indicated Defendants do not oppose the proposed settlement at the April 11, 2024, hearing.

[8] Some courts have expressed concern regarding the combability between a FLSA collective action and a related Rule 23 class action.  *See, e.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011) (noting district courts are "divided" on the issue but declining to reach it).  The court is persuaded those concerns are not implicated at this time.  The FLSA Collective was conditionally certified by the previous court in January 2021.  (Dkt. 100.)  The proposed settlement does not include individuals who did not opt-in to join the FLSA collective.  (*See* Palau Decl., Exh. 1 §§ I.V, X, IV.E); *see also* 29 U.S.C. § 216(b).  In light the circumstances and considering the proposed settlement as a whole, the court finds it appropriate to proceed with both the FLSA and Rule 23 claims together.  *See Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) ("[C]ourts that

of-pocket expenses these individuals are estimated to have spent to obtain H-2A visas and travel to the U.S., and an additional $500 allegedly due to them as liquidated damages under FLSA.  (Palau Decl. ¶ 27.)  At this stage,[9] and noting the award to the FLSA collective is separately earmarked from other settlement funds, the court is satisfied it is a reasonable amount as to this claim.  *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 968 (N.D. Cal. 2019) (noting courts "have generally concluded that between 70 percent and 100 percent of a plaintiff's FLSA damages constitutes a reasonable settlement"); *see also Farthing v. Taher, Inc.*, 2017 WL 5310681, at *1 n.1 (C.D. Cal. Nov. 9, 2017) ("Where a defendant offers a plaintiff full compensation for an FLSA claim, no compromise is involved and judicial approval is unnecessary.") (citing *Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003)).

Plaintiff also highlights the risks of proceeding with this case, both from legal and practical standpoints.  Plaintiff's counsel expresses concern about the potential lack of documentary evidentiary proof supporting some of these claims, noting the class's claims dependent on rest and meal breaks would rely on testimonial evidence. (Palau Decl. ¶ 44.)  Plaintiff's counsel also notes Plaintiff's travel claim was "hotly contested" and that "the facts developed in this case presented a novel question which could have gone in favor of Plaintiff or [Defendants]."  (*Id.* ¶ 45.)  Additionally, Plaintiff's counsel notes the estimated $11 million in potential recovery under the

have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims.") (citations omitted); *see also Ervin v. OS Rest. Servs.*, 632 F.3d 971, 976-79 (7th Cir. 2011) (holding class actions based on state employment laws under Rule 23 can coexist with FLSA collective actions).

[9] The court notes it may require further proof of that these damages are "full relief" under the FLSA at the full fairness hearing on this matter.  *See generally* 29 U.S.C. §§ 216(b), 260 (discussing awards of liquidated damages in cases of certain FLSA violations).

PAGA claim is uncertain because courts have discretion to reduce the civil penalty award in PAGA cases, and the $11 million estimate assumes a maximum amount of civil penalties.  (*Id.* ¶ 46); *see* Cal. Labor Code § 2699(e)(2) (permitting courts to "award a lesser amount than the maximum civil penalty amount . . . if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory").

Plaintiff's counsel also emphasizes Defendants' ability to pay served as a major consideration in resolving this case.  (Palau Decl. ¶ 47.)  After engaging a forensic accountants and Defendants' financial records, Plaintiff's counsel verified that Defendants were financially constrained.  (*Id.*)  Plaintiff's counsel submits that the evaluation of their forensic accountant enabled Plaintiff to "negotiate an amount . . . Defendants would be able to pay without seriously jeopardizing the continuation of their operation."  (*Id.*)  Plaintiff's counsel further opines the continued financial drain of litigation would prevent Defendants from paying a substantial sum if the case goes forward.  (*Id.* ¶ 48); *see Class Plaintiffs*, 955 F.2d at 1295 ("[A] settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement.") (citation omitted).

So far, there has been no presence of a governmental participant evident from the record.  The court has also received no objections from potential class members at this early stage, and Plaintiff's counsel noted at oral argument on April 11, 2024, that no class members have communicated their reactions to the proposed settlement at this time.  Accordingly, at this preliminary stage, these factors do not weigh strongly in favor of approving or declining to approve the proposed settlement.

In sum, examining "the complete package taken as a whole," *see Officers*, 688 F.2d at 628, the court concludes the proposed settlement falls within the range of reasonableness.  Accordingly, the court finds preliminary certification of the proposed settlement under Fed. R. Civ. P. 23(e) proper.

1

### C.        PAGA Claim

2       The court next considers whether the settlement terms of Plaintiff's PAGA

3  claim "(1) meet the statutory requirements set forth by PAGA, and (2) are

4  fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals."

5  *See, e.g.*, *Chamberlain*, 2020 WL 4350207, at *4.

6       With respect to the statutory requirements, PAGA requires that 75 % of civil

7  penalties recovered be allocated to California's Labor and Work Force Development

8  Agency ("LWDA") and 25 % be allocated to aggrieved employees.  Cal. Labor Code

9  § 2699(i).  Here, $15,000 is allocated to the PAGA claim in total.  (Palau Decl. ¶ 28.)

10  As is statutorily appropriate, 75% of the $15,000 is allocated to the LWDA and 25%

11  of it is earmarked for class members.  (*Id.*)

12       Several district courts "have applied a Rule 23-like standard, asking whether the

13  settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

14  light of PAGA's policies and purposes.'"  *Haralson v. U.S. Aviation Servs. Corp.*, 383

15  F. Supp. 3d 959, 972 (N.D. Cal. 2019) (collecting cases).  Courts that apply this

16  method of analysis rely on a response from the LWDA submitted in connection with a

17  motion for preliminary approval in a separate case:

18

19       It is thus important that when a PAGA claim is settled, the relief provided

20       for under the PAGA be genuine and meaningful, consistent with the

21       underlying purpose of the statute to benefit the public and, in the context

22       of a class action, the court evaluate whether the settlement meets the

23       standards of being 'fundamentally fair, reasonable, and adequate' with

24       reference to the public policies underlying the PAGA.

25

26       *See id.* (quoting *O'Connor*, 201 F. Supp. 3d at 1133).

27       In light of this guidance, the court finds the proposed settlement is within the

28  range of approval on the bases of fairness, adequacy, and reasonableness for the

reasons discussed above.  Additionally, "the lack of objection from the LWDA despite being provided timely notice of the terms of this proposed settlement" supports a finding of fairness.  *See Chamberlain*, 2020 WL 4350207, at *5.  The proposed settlement furthers PAGA's public policy goals including "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance."  *O'Connor*, 201 F. Supp. 3d at 1132-33 (citations omitted).  Because "Plaintiff's representative PAGA claim reached conduct not directly addressed by the state, and resulted in the state's recovery of $[11250] in civil penalties," the "[i]mposition of those penalties will encourage future compliance with the California Labor Code."  *See Quiruz*, 2020 WL 6562334, at *9.

### D.   Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule requires that the notice "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* (paragraph breaks omitted).

The court finds the notice procedure in the proposed settlement (Palau Decl., Exh. 1, Exh. A) sufficiently meets these requirements.  The court finds the proposed notice procedure is the best practicable because the procedure requires notice to class

members via U.S. Mail.  (Palau Decl., Exh. 1 § VII.D.2.)  Additionally, to accommodate for the large number of class members working broad under H-2A visas in Mexico and potentially elsewhere, the proposed settlement provides through WhatsApp messaging service accounts, which Plaintiff's counsel has previously used to communicate notice to the FLSA Collective pursuant to the court's earlier order conditionally certifying the FLSA Collective.  (*Id.*; Palau Decl. ¶ 33.)  It also contains the information required by Rule 23(c)(2)(B)(i)-(vii) as stated above in adequately plain language.  (*See* Palau Decl., Exh. 1, Exh. A (proposed class notice)); *Churchill Vill.*, 361 F.3d at 575 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (citation and internal quotation marks omitted).  Accordingly, the court concludes the proposed settlement meets Rule 23's notice requirements to the class.

## IV.   Disposition

For the reasons stated, the court concludes Plaintiff has adequately shown that the court will likely be able to approve the proposed settlement in this action as fair, adequate, and reasonable to the class, and certify the class for purposes of settlement.  *See* Fed. R. Civ. P. 23(e)(1).  Accordingly, the Motion is **GRANTED**.  The court **ORDERS** as follows:

> 1. The Court **preliminarily approves** the Class Action Settlement Agreement (Palau Decl., Exh. 1) pursuant to Federal Rule of Civil Procedure 23(e)(1); and
>
> 2. The Court grants conditional certification for settlement purposes only of the following Class for settlement purposes only, pursuant to the Federal Rule Civil Procedure 23(e):

All non-exempt agricultural employees who performed field work for NHH Defendants in the production of strawberries—including, but not

limited to, tasks such as planting, cultivating, pruning, harvesting, picking, and packing—in California at any time between February 4, 2016, through the date of preliminary approval.

3. The Court Appoints Verónica Meléndez and Ezra Kautz of California Rural Legal Assistance Foundation and Marco A. Palau, Joseph Sutton, and Eric Trabucco of Advocates for Worker Rights LLP as counsel for the Settlement Class;

4. The Court appoints Plaintiff Miguel Gutierrez as the Class Representative for the Class;

5. The Court **approves**, as to form and content, the proposed Class Notice (Palau Decl., Exh. 1, Exh. A) and the procedure for providing notice to the Class; and the procedure for Class members to object to, or request exclusion from, the Settlement.  In implementing the proposed notice procedure, the Parties may make any necessary changes to these documents provided those changes are consistent with this Order;

6. The Court will not rule on the proposed attorneys' fees and costs or the proposed Class Representative and FLSA opt-in Plaintiffs Enhancement Awards at this time; rather, it will consider whether to approve those requests based on its review of a separate noticed motion to be filed by Plaintiff prior to the final approval hearing;

7. The Court **appoints** Atticus Administration, LLC ("Atticus" or "Settlement Administrator") as the Settlement Administrator and directs the Settlement Administrator to perform all tasks related to administration and distribution of this Settlement;

8. The Settlement Administrator is further ordered to provide the approved Class Notice in accordance with the schedule below (to the extent any discrepancies between these items and the Settlement exist, the terms of this Order shall control):

- Not later than fourteen (14) days after the District Court Grants Preliminary Approval of the Settlement, Defendants shall provide the Settlement Administrator with a Class List containing each Class and Collective Member's name, last known address, telephone number, and workweek data. Defendants shall also provide copies of each Class and FLSA Collective Member passports so that Plaintiff's counsel can attempt to locate workers not resided in Mexico or the United States;

- Not later than thirty (30) days of receipt of receiving the Class Data, the Settlement Administrator shall send the Class Notice to the last known address or updated address of each Class Member via U.S. Mail and/or WhatsApp;

- Not later than three (3) business days after the Settlement Administrator's receipt of any Class Notice returned as undelivered, the Settlement Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS.  If the USPS does not provide a forwarding address, the Settlement Administrator shall conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained;

9. The deadlines for Class Members' written objections, Challenges to Workweeks and/or Pay Periods, and Requests for Exclusion will be extended an additional 14 days beyond the 60 days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed re-mail the Class Notice to the most current address obtained;

10. For any Class Member whose Individual Class Payment or Individual PAGA Payment is uncashed and cancelled after the void date, or for any amount that is not claimed by a Participating Class Member or Aggrieved Employee with an address outside of the United States, the amount of such uncashed amounts shall be re-distributed to Class Members and Aggrieved Employees who received and cashed their first payment, unless the total uncashed amount is less than $10,000, in which case the uncashed funds shall be delivered to a Court-approved nonprofit organization or

foundation consistent with Code of Civil Procedure section 384(b) ("Cy Pres Recipient").  Any funds that are not cashed within 180 days after this second distribution shall be distributed to the Cy Pres Recipient.  The Parties will propose the United Farm Workers Foundation as the Cy Pres Recipient; and

11. A Final Approval Hearing is scheduled on **August 22, 2024, at 10:00 a.m.**[10] in **Courtroom 10D** of this court, to determine whether the Settlement is fair, adequate, reasonable, and should approved.  The Court reserves the right to adjourn or continue the date of the Fairness Hearing without further notice to the Class.

**IT IS SO ORDERED**.

Dated:  April 26, 2024

_____
Hon. Fred W. Slaughter
UNITED STATES DISTRICT JUDGE

---

[10] Should the parties believe another open date on the court's calendar is more amenable to holding the final fairness hearing on the matter, the parties may file a joint stipulation requesting to continue or advance the hearing date scheduled by the court.